WILLIAM W. GROWS *vs.* MAINE CENTRAL RAILROAD Co.

Cumberland. Decided May 31, 1877.

*Trial. Railroad.*

A question in a trial arising out of undisputed facts is one of law for the court. The question of reasonable care, when the facts are agreed, is one of law.
The plaintiff in his declaration stated that he being in a narrow fenced lane leading to the crossing over the defendants' railroad, and distant about two and a half rods from its track, and perceiving the defendants' train forty rods from, but approaching the crossing, he being distant seven rods therefrom, attempted to cross the track before the train should reach it; that his attempt was unsuccessful, and that he was injured. *Held*, on demurrer to the declaration that on the plaintiff's statement of facts he was not in law entitled to recover.

ON EXCEPTIONS from the superior court.

TRESPASS ON THE CASE, for that, on the thirtieth day of November in the year of our Lord eighteen hundred and seventy-four, at said Brunswick there was an open way leading from the old turnpike road, so called, and from a point near the dwelling house of the plaintiff to a point in the highway leading from Brunswick village to Bath, near to Haines' brook, which said way was crossed by the railroad of the defendant corporation upon the same level, upon which said way persons were then and there often passing and repassing on foot and with their teams and carriages. And so much of said way as extended from the old turnpike road aforesaid, to the crossing of said railroad was then and there a lane with fences upon each side thereof so narrow that teams having once entered into the same could not be turned around without great difficulty. And the plaintiff says, that on the thirtieth day

of November, aforesaid, he had entered said lane, and was passing upon said way with his horse harnessed to a good and strong team wagon of the value of thirty dollars, upon which he was then riding, and approaching said crossing, and had reached a point about seven rods from said crossing, and about two and one-half rods in a direct line from the track of said railroad, when an engine and train of cars under the direction, management and control of the defendant corporation by its servants and agents, approaching said crossing, came in view about forty rods from said crossing without any warning or signal having been given of their approach thereto. And said plaintiff knowing that he could not turn his said team in said lane, and believing that he could get his said team over and across said crossing before said train would reach the same, and that he could secure his safety in no other way, and supposing said train was approaching at an ordinary rate of speed, urged his said horse forward, and used his utmost exertions to get his said team over said crossing before said train should arrive at the same, which he could well have done if said train had been moving at an ordinary rate of speed. But the plaintiff says that said train was then and there running at an unusually rapid rate of speed, and although the said plaintiff drove his said horse forward very rapidly in his efforts to get safely over said crossing, he was overtaken by said train before his said team had passed entirely over said crossing, and his said wagon was struck by said engine and thereby dashed to pieces, broke and destroyed, and the plaintiff was struck upon his back and thrown by said engine a great distance whereby he was greatly bruised, strained, hurt and injured.

And the plaintiff says that in his efforts to get over and across said crossing with his said team he was in the exercise of due and reasonable prudence, care and diligence, and that said defendants were guilty of gross carelessness and negligence in running said train rapidly in its approach to said crossing, and giving no warning or signal of its approach thereto, and in not checking or slacking the speed of said train when they saw that the plaintiff was in danger of being struck by said engine if it continued running as rapidly as it was then moving, whereby, the plaintiff says, he has suffered great bodily pain and mental anguish; that he has

been rendered unable to labor thereby; that he was for a long time confined to his bed, and although nearly seven months have elapsed since said injury, he is unable still to dress himself without assistance, and he still suffers great pain from the effect of said injury, and must suffer from the effects thereof as long as he shall live; and he has been obliged to incur great expenses by reason of said injury, and suffered great loss, and must hereafter suffer great loss by reason of his inability to labor as before said injury he was wont to do. To the damage of the said plaintiff (as he says) the sum of six thousand dollars.

By agreement, the case was submitted to the law court as upon a demurrer to the declaration filed at the first term, the decision to be the same as if presented on exceptions, to be argued in writing under R. S., c. 77, § 14.

*J. H. Drummond* and *J. O. Winship, for the defendants.*

The plaintiff alleges that the defendants were negligent, and that he was in the exercise of prudence and ordinary caution. As he has set out all the circumstances in his declaration, if the facts show that these allegations of negligence on one side and care on the other are not true, the general allegations cannot avail even on demurrer to the declaration. They are conclusions of law and not of fact, and therefore not admitted by the demurrer.

I. When the facts are undisputed, the question whether in a given case the parties have exercised due care or have been guilty of negligence is a question of law.

The question of negligence "includes two questions: 1, whether a particular act has been performed or omitted, and 2, whether the performance or omission of this act was a breach of legal duty. The first is a pure question of fact, the second a pure question of law." Shearman & Redfield on Negligence, § 11. *Gavett* v. *Manchester & Lawrence,* 16 Gray, 501, 506. *Dascomb* v. *Buffalo & State Line,* 27 Barb. 221. *Biles* v. *Holmes,* 11 Ired. 16. *Avera* v. *Sexton,* 13, Ired. 247. *Heathcock* v. *Pennington,* 11 Ired. 640. *Herring* v. *Wilmington Railroad,* 10 Ired. 402. See also 53 N. Y. 654; 13 Barb. 9; 4 Vroom, (N. J.) 430; 38 Md. 588. *Gahagan* v. *Boston & Lowell,* 1 Allen, 187, 190. *Burns*

v. *Boston & Lowell*, 101 Mass. 50. *Todd* v. *Old Colony & Fall River*, 3 *Allen*, 18, 22. *Lucas* v. *New Bedford & Taunton*, 6 Gray, 64. 7 Allen, 207. 8 Allen, 235. *Forsyth* v. *Boston & Albany*, 103 Mass. 510. A distinction is to be taken as to the manner in which the question arises. Cases in which it has been properly held that the question of ordinary care is for the jury are not like this where the facts are established by demurrer. It is a familiar rule of pleading that on demurrer the judgment of the court is prayed, not of the jury. And that judgment should be based upon the plaintiff's case as he states it in his declaration without the aid of supplementary circumstances.

II. The allegations of negligence on the part of the defendants are not in law negligence. The way not being a public way, the defendants were under no legal obligation to signal their approach. They have a right to run their trains at unusual speed. No allegation except by inference that the defendants' servants saw the plantiff at all, and not even by inference that they saw him in season to check the train.

III. The hurt received by the plaintiff was the result of his own criminal recklessness.

*F. Adams*, for the plaintiff.

Though the way was not laid out under our statutes, it was a way open to travel crossing the railroad on the same level, and the provisions of R. S., c. 51, § 17, are applicable; and even if it were not, the defendants are bound to use care in crossing. A railroad company may comply with all statute requirements, and still have negligence imputed to them. *Webb* v. *Portland & Kennebec*, 57 Maine, 117. *Bradley* v. *Boston & Maine*, 2 Cush. 539. *Richardson* v. *New York Central*, 45 N. Y. 846. *Beers* v. *Housatonic Railway*, 19 Conn. 566. *Pennsylvania Railroad* v. *Barnett*, 59 Pa. St. 259.

The attempt of the plaintiff to cross the track was not *per se* negligence. Whether it was so or not depended upon the circumstances. Negligence is not a question of law, even when the facts are undisputed, unless there has been a violation of plain legal duty. *Pennsylvania Canal Co.* v. *Bentley*, 66 Pa. St. 30.

True, the case being before the court on demurrer, all the facts declared are admitted, but not all that are in the case. It is not necessary to declare all the facts and circumstances. The judgment of the court is prayed whether in substance the plaintiff has stated sufficient material facts to entitle him to recover, provided they with other facts and circumstances which may be proved without being set out, show that the injury was caused through the negligence of the defendants without any contributory want of care on his part.

APPLETON, C. J. This case comes before us upon a demurrer to the plaintiff's declaration. There are, then, no facts in dispute. The facts being admitted, it becomes the duty of the court to apply the law to the facts. It was held by the supreme court of Pennsylvania, in *Hoag* v. *Lake Shore & Michigan Southern R. R. Co.*, 1 Reporter, 89, that, where facts are admitted or established without conflict, the court may declare, as a matter of law, whether such facts do or do not amount to negligence.

The plaintiff being in a narrow fenced lane leading to the crossing over the defendants' railroad, and distant about two and half rods from its track, and perceiving the defendants' train forty rods from but approaching the crossing, he being distant seven rods from the same attempted to cross the track before the train should reach it. His attempt was unsuccessful and he was injured. Hence this suit.

It is negligence to attempt crossing the track of a railroad without looking to see if the cars are approaching. If the traveler does not look and his omission contributes to his injury, he is guilty of such negligence as will bar his recovery, notwithstanding the negligence of those in charge in omitting to sound the whistle or ring the bell. *Gorton* v. *Erie Railway*, 45 N. Y. 660. *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77. *Wheelock* v. *Boston & Albany Railroad*, 105 Mass. 203. *Butterfield* v. *Western Railroad*, 10 Allen, 532. But it is greater negligence for one seeing the cars approaching at ordinary speed to make the attempt. The plaintiff was protected by the fences. He had nothing to do but to rein in his horse. He saw the danger and hastened to incur it. The excuse given for the foolhardy attempt

made, is that the lane was so narrow that he could not turn. But the fact that he could not turn was no excuse for driving on. He should have stopped where he was till the cars had passed. "The right of a man to risk his own life, and that of his horse," observes Paxson, J., in *Philadelphia, W. & B. Railroad* v. *Stinger*, 78 Pa. St. 219, 220, "may be conceded; but not the right, by an act of negligence, if not of recklessness, to place in peril the lives of hundreds of others who may happen to be traveling in a train of cars."

He assumed the risk of an attempt which put in peril the lives of passengers, as well as his own life. His own rash act contributed to the injury, and in such case a party cannot recover. The facts being undisputed the question of contributory negligence is one of law. *Morrison* v. *Erie Railway*, 56 N. Y. 302. *Nichols* v. *Great Western Railway*, 27 Canada, Q. B. 382.

It is not enough to show negligence on the part of the defendants, if the plaintiff's negligence contributed to the injury he cannot recover. But here it is difficult to perceive wherein the negligence of the defendants is shown.

The alleged negligences of the defendants are, (1) that no warning was given of the approach of the train. But it is not pretended that the crossing was one where the statute requires a bell to be rung. And if it was, the omission to ring did not contribute to the injury, inasmuch as the plaintiff saw the approaching train. Vision was better than hearing. (2. ) It is stated as a matter of complaint that the defendants were running at unusual speed. Trains must make connections. They are not limited to any rate of speed. The court cannot say as matter of law that running with more or less than the average or usual speed is negligence. *McKonkey* v. *Corning &c. Railroad*, 40 Iowa, 205. The hypothesis of the plaintiff's writ, is that hastening and slacking speed is of itself negligence.

The plaintiff does not allege in his writ that the servants of the defendants saw him in sufficient season to have avoided the collision; and if they did not, they were not required to slacken speed without any apparently existing cause therefor.

The remarks of Hagarty, J., in *Nichols* v. *Great W. Railway*, 27 Canada, 382, 395, in a case almost precisely like the one under

consideration, are peculiarly applicable. "I can see," he says, "nothing moving towards this unfortunate accident, . . except an utter disregard on the part of the cab driver of that common prudence and care which should govern every person about to cross a well known railway crossing, known to be unfenced and to be constantly traversed by trains. If parties so acting can recover, it must be solely on the ground that the defendants are a railway company; and to hold such parties entitled to damage, notwithstanding this disregard of their own safety, is to encourage carelessness and endanger human life, not only on the part of those crossing the track, but also on the part of the passengers on the trains."                *Declaration bad.*

                                    *Demurrer sustained.*

WALTON, DANFORTH, and PETERS, JJ., concurred.

VIRGIN, J., concurred in the result.

DICKERSON, J., dissenting. This case is presented to us upon a demurrer to the declaration filed at the first term, and the decision is to be the same and have the same effect as if the case were presented on exceptions.

The demurrer admits the facts alleged in the declaration, and the court are to determine from them, as pleaded, whether the plaintiff, as matter of law, is entitled to maintain this action. To maintain the suit, it is incumbent upon the plaintiff to allege due care on his part and negligence by the defendants. It is not pretended by the learned counsel for the defendants that the writ does not allege in general terms due care on the part of the plaintiff, but he argues that the specific allegations upon this point show such a state of facts as to authorize the court to declare, as matter of law, that there was contributory negligence on his part.

In addition to the general allegations of due care by the plaintiff, the declaration sets forth, in substance, that the plaintiff with a horse and team wagon was passing along an open way, crossed by the railroad upon the same level, which way people were accustomed to travel, and which was inclosed with fences on each side, and so narrow that teams could not be turned around without great difficulty, and that he had reached a point about seven rods

from the railroad crossing, and about two and a half rods in a direct line from the railroad track, when the train approaching the crossing came in view about forty rods therefrom ; and that knowing he could not turn his team in the lane, and believing he could pass over the railroad crossing before the train would reach it, and that he could secure his safety in no other way, and supposing that the train was approaching at an ordinary rate of speed, urged his horse forward, driving him very rapidly, and used his utmost exertions to get his team over the crossing before the train should reach it, which he could well have done if the train had been going at an ordinary rate of speed, but that the train was moving at an unusually rapid rate of speed, and overtook him, and the engine struck his wagon before he had got over the crossing, dashed it in pieces, and inflicted severe injury upon himself and horse.

It is argued in defense, and held by a majority of my brethren, that the facts being admitted by the demurrer, the question whether the plaintiff was in the exercise of ordinary care, is one of law and not of fact. I cannot assent to this proposition, as an absolute rule of law. Waiving the question of possible cases, I think the better rule, and that which accords with principle and authority is that, even when the facts are undisputed, the question of ordinary care is in general a mixed question of law and fact to be submitted to the jury under proper instruction. This is the law as administered in the early cases in this state, and recently affirmed in *Webb* v. *Portland & Kennebec Railroad Co,* 57 Maine, 117, 131.

I am aware that the court in Massachusetts, in certain railroad cases, have inclined to the doctrine contended for by the counsel for the defendants, but that line of decisions has not been followed by the court in this state, and is not in accordance with the recent decisions in the English courts, the courts in Pennsylvania, Michigan and other states, as well as the supreme court of the United States. *Patterson* v. *Wallace,* 28 Eng. L. & Eq. 48. *Penn. Canal Co.* v. *Bentley,* 66 Pa. St. 30.

In *Detroit & Milwaukee Railroad* v. *Van Steinburg,* 17 Mich. 99, the court lay down the rule, as deduced from an extended analysis of the cases, that where the facts are disputed, or when

they are not questioned, but different minds might honestly draw different conclusions from them, the case must be left to the jury.

This seems to be the view the supreme court of the United States took of this question in *Railroad* v. *Stout*, 17 Wall. 657. After theorizing in regard to extreme possible cases, the court say: "But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established, from which one sensible impartial man would infer that proper care had not been used, and that negligence existed; another man equally reasonable and impartial, would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education, and men of little education, men of learning, and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than one man does, that they can draw wiser and safer conclusions from admitted facts thus occurring, than can a single judge."

In *West Chester etc. Railroad* v. *McElwee*, 67 Pa. St. 311, 315, the court say : "The law is well settled that what is and what is not negligence in a particular case is generally a question for the jury and not for the court. It is always a question for the jury when the measure of duty is ordinary care. In such cases, the measure of duty is not fixed but variable ; under some circumstances a higher degree of care is demanded than under others, and when the standard shifts with the circumstances of the case, it is in its very nature, incapable of being determined, as a matter of law, and must be submitted to the jury to determine what it is and

whether it has been complied with." Thus the rule of law adopted in this state, upon this subject, is not only sustained by the decisions of courts of the highest authority, but its *rationale* is susceptible of moral demonstration. It is believed that the true rule of law is, that when different men of equal intelligence and impartiality may honestly draw different inferences, and form different conclusions from the admitted facts, upon the question of ordinary care, the case should be submitted to the jury under appropriate instructions of the court in matters of law. This rule is explicitly affirmed and applied by this court in the recent case of *Larrabee* v. *Sewall,* 66 Maine, 376. I am unable to perceive why this doctrine does not apply with equal force in actions against railroad corporations. In that case, as in this, several alternatives were presented to the plaintiff by which she might fairly hope to avoid collision with the defendant's carriage; and the court held, upon solemn argument, that she could not be held guilty of contributory negligence, as matter of law, for adopting one, and not another, of the alternatives presented, but that such question was a question of fact solely for the determination of the jury. I cannot therefore avoid the conclusion that the opinion of a majority of my brethren in this case, is in direct conflict, and irreconcilable with the law as laid down in *Larrabee* v. *Sewall.* In my judgment the law does not sanction the withdrawal of the question of ordinary care from the jury in actions against railroad corporations, while it requires the submission of the same question to them, in actions between individuals; the law confides no such dispensing power in this court.

In passing from the law to the allegations in the writ it becomes obvious that this is not one of "the extreme cases," referred to by the court in *Railroad* v. *Stout, ante,* where the court would be authorized to predicate contributory negligence, as matter of law, upon the facts admitted, but rather a case where, in the language of the court, in *Detroit & Milwaukee Railroad* v. *Van Steinburg, ante,* "different minds might honestly draw different conclusions from the admitted facts," in which case the question must be determined by the jury. The plaintiff was lawfully upon the road, and had a legal right to drive across the railroad track,

He was not in the violation of any duty imposed by positive law. Upon the question, what did ordinary care require him to do, when he suddenly saw the danger that beset him, "different minds might honestly draw different conclusions." Whether to dash on as he did, or to try and turn his team about in that narrow lane, or attempt to stop and hold it, so near the rapidly approaching train, were questions which might have been differently decided at that time by different travelers, of equal intelligence, sagacity and prudence, so much depended upon a due estimate of the velocity of the train, and his distance from it, the fleetness of his horse, and his susceptibility of control, or the contrary, and his own temperament, activity and presence of mind, in the midst of sudden and imminent personal peril. *Larrabee* v. *Sewall*, 66 Maine, 376.

Upon the question of presence of mind, so to speak, in a sudden emergency, Wharton in his law of Negligence, § 304, uses this language : "As a rule, therefore, we may say that a person is not chargeable with contributory negligence, who, when unwarned peril comes on him, suddenly acts wildly and madly. For persons in great peril are not required to exercise all the presence of mind and care of a prudent, careful man; the law makes allowances for and leaves the circumstances of their conduct to the jury." If to the considerations to which I have adverted, we add the want of evidence, not necessary to be alleged in the declaration, but, nevertheless, material to the issue, such as the plaintiff's age, weight and ability for quick decision and prompt action, I think it is apparent that the case is a proper one to be submitted to a jury. The situation required of the plaintiff a rapid survey of the whole field of danger, a speedy deduction of inferences, expert calculation, and instant choice of chances ; and although we can never know what would have been the result if he had adopted the alternative of attempting to stop his team, or turn it around, yet it seems to me that it would be a reproach upon the law to hold him guilty of contributory negligence, as matter of law, for adopting the alternative that actually carried him within a single second of safety.

Nor do I think the other position taken by the counsel for the

defendants, and sustained by a major ity of my brethren, tenable—
that the allegations of negligence in the declaration are insufficient
in law, and should so be pronounced by the court. These allega-
tions are, running the train at an unusual rate of speed, giving no
warning or signal of its approach, and not slacking its speed when
the plaintiff came in view of it. The first allegation may or may
not show negligence; it is allowable for trains to be run at an
unusual rate of speed under certain circumstances and not under
others; whether allowable or not depends upon the positive pro-
visions of law, and all the surrounding circumstances. It is not a
sufficient answer to the first allegation that the statute makes nr
provision in regard to the rate of speed to be o bserved by a train
in approaching such a crossing. Only a tithe of the duties
devolved upon railroad corporations is specifi cally enjoined by stat-
ute. A compliance with the requirements of the statute, by no
means absolves such corporations from observing such other pre-
cautions as reasonable and ordinary care require under the circum-
stances of the case. This principle applies as well to the making
of signals and slacking of speed when the train is approaching a
crossing, as to the first allegation. *Webb* v. *Portla nd and Ken-
nebec,* 57 Maine, 117.

The three fold negligence of the defendants is distinctly, and we
think sufficiently stated, as the cause of the plaintiff's disaster.
Whether those allegations amount to negligence, is a mixed ques
tion of law and fact to be submitted to the jury with proper
instructions in view of all the evidence in the case. Whether
due care required the conductors of the train to run it at a mod-
erate rate of speed, when approaching the crossing, or to give warn-
ing of such approach, or to slacken its speed on that occasion,
depends upon the usual amount of travel over the crossing, the
opportunity for seeing the plaintiff, the provisions of the stat-
ute, if any, upon that subject and all the circumstances of the
situation. From the admitted facts in this case different men
of equal intelligence and prudence might honestly draw dif-
ferent inferences, and form different conclusions. One man
might conclude that due care required of the . defendants
the use of one, at least, or all of these precautions; another,

that it did not require either. In such a case, it would be little short of tyranny in the court arbitrarily to interpose its fiat, and declare that the defendants are guiltless of all fault. The law, it is submitted, in its wisdom, rather invokes the aver age judgment of the jury on such occasions. I think the entry should be,

> *Demurrer overruled, dec-*
> *laration adjudged good,*
> *action to stand for trial.*

BARROWS and LIBBEY, JJ., concurred in this dissenting opinion.