# CHARLESTON.

YOUNG *v.* WEST VIRGINIA & P. R. CO.

(BRANNON, JUDGE, *concurring.*)

(ENGLISH, PRESIDENT, *dissenting.*)

Submitted September 7, 1897—Decided  December 4, 1897.

1. APPEAL—*Verdict—Review on Appeal.*

    The verdict of a jury will be held sacred by this Court, unless there is a plain preponderance of credible evidence against it, evincing a miscarriage of justice from some cause, such as prejudice, bias, undue influence, misconduct, oversight, or misconception of the facts or law.   (p. 219.)

2. JURY—*Witnesses—Testimony.*

    The jury is the sole judge of  the  credibility of  contradicting witnesses, and of the weight to be  given to their testimony.   (p. 219.)

Error to Circuit Court, Harrison County.

Suit by Lavernia E. Young, as administratrix of the estate of E. L. Young, deceased, against the West Virginia & Pittsburg Railroad Company, to recover damages. Plaintiff had judgment, and defendant brings error.

*Affirmed.*

JOHN BASSEL and JOHN BRANNON, for  plaintiff in error.

DAVIS & DAVIS, for defendant in error.

DENT, JUDGE:

The West Virginia & Pittsburg Railroad Company obtained a writ of error to the judgment of  the circuit court

of Harrison county confirming the judgment of a justice of the peace in favor of Lavernia E. Young, administratrix, for the sum of one hundred and twenty dollars. The only error relied on is that the verdict of the jury was contrary to the law and the evidence. The plaintiff's intestate and his horse were killed, and his buggy was badly damaged, at a crossing in the county of Harrison, a few miles from Clarksburg. This suit was to recover the damages occasioned by the loss of the horse and injury to the buggy. The negligence insisted on against the company was that the train was running one hour late, at an unusual speed, and the engineer and fireman were negligent in not keeping a proper lookout at this known to be dangerous crossing, and in not giving the proper signals required by statute. The defense was contributory negligence on the part of the deceased. The evidence of numerous witnesses was taken, which is plainly conflicting as to whether the signals were given, while all the circumstances show that a proper lookout for this crossing was not being kept. The fireman testifies that the deceased, on seeing the train coming, whipped up his horse, and endeavored to cross ahead of the train, while there are some facts and circumstances tending to contradict him, and the jury hearing his evidence and seeing him testify refused to credit his statement. In the absence of the deceased, the evidence being so conflicting, and dependent to some extent on the manner, bearing, and conduct of the witnesses, this Court is unable to say that the jury did not properly weigh the evidence, and fairly determine the credibility of the witnesses. It is therefore impossible to hold that the evidence manifestly and decidedly preponderates against the verdict. As to questions of fact dependent on oral testimony, the verdict of a jury is entitled to great consideration and weight, and it should not be lightly set aside because the evidence, as contained in the record, may apparently, in comparing the number of witnesses, be against the finding, for there are many things besides the testimony of the witnesses as taken down by a reporter that the jury is permitted to consider, and of such character that they cannot be made to appear in the record for the inspection of this Court. *Akers* v. *Dewitt*, 41 W. Va., 229,

(23 S. E. 669); *Sisler v. Shaffer*, 43 W. Va., 769, (28 S. E. 721). In accordance with the former rulings of this Court in similar cases, the judgment is affirmed.

BRANNON, JUDGE, (*concurring*):

I agree with JUDGE DENT in the foregoing opinion. I write this note to say that I think the similar case of *Railroad Co.* v. *Bryant's Adm'rs* (Sept. 23, 1897) 28 S. E. 183, which has met my eye since our decision, strongly sustains us, as an appellate tribunal, in regarding ourselves controlled by the verdict. If injustice has been done, it rests not upon our consciences. If Young did, after seeing the train, attempt to drive over the track, he could not —ought not—recover, but the jury refused to credit the witness who gave evidence that Young did so, and we cannot reverse the jury on a fact dependent purely on credibility of a witness. Again if, the whistle was blown, the company was guilty of no negligence. The jury has found under evidence pro and con on the question that the whistle was not blown, and we are asked to ignore the verdict on a mere question of fact involving inferences and deductions from the evidence, and largely the credibility of witnesses, matters peculiarly within the province of a jury. Since our decision a question has more pointedly pressed upon my mind than it did at that time, and it is this: the relative situation of railroad and turnpike with reference to each other is such that it may be plausibly asserted that Young could have both seen and heard the train, and should have looked and listened, as the law and his personal safety demanded, even if the whistle was not sounded, and if he failed to do so was guilty of contributory negligence. 1 Shear. & R. Neg. § 469, states the law to be that: "When a human being has been injured at a railroad crossing, there is a reasonable presumption that the warning conveyed by the sound of a bell or whistle would have been beneficial to him; but if, without these signals, he knew, or by the exercise of ordinary care would have known, of the proximity and approach of the train, this presumption is rebutted; and, without further evidence connecting the omission of signals with the injury, the company is not responsible for it on that ground

alone." This is sound law beyond question. The only perplexing question in this case to me, on the application for rehearing, is, if it is plausible to say that Young could, by ordinary care, have seen and heard the train, and there is no evidence whether he did or did not look and listen, what ought an apellate court to do? Ought it to overthrow the verdict, or say that the question whether Young did look and listen is a jury question, under all the facts and circumstances? All authorities agree that the question of contributory negligence is a jury question. *Sheff v. Huntington*, 16 W. Va., 307. When it is so plain from the evidence that all reasonable men must draw the same conclusion,—where there is no room for two opinions,—it is a question of law for the court; but, where reasonable men may differ about it, it is for the jury. *Raines* v. *Railway Co.*, 39 W. Va., 50, (19 S. E. 565). In note to Beach, Contrib. Neg. 3182, it is laid down: "Where there is no evidence that the party injured stopped and listened, the court will not presume that he did not stop, and adjudge him guilty of negligence, but will leave the question to the jury. "Indeed *McBride* v. *Railroad Co.*, 19 Or. 64, (23 Pac. 814) holds that, in absence of evidence, the presumption is that the traveler looked and listened. So in *Railroad Co.* v. *Weber*, 18 Am. Rep. 407.

A careful reconsideration brings me to the same conclusion I held when the case was first presented to me; that is that as an appellate court we cannot disturb the verdict. Thus we see, in this instance, as in many others, how very important is the function of juries in our courts. Bitter complaint is often made at the bar of the courts of their prejudice against corporations. We should be slow to believe this impeachment. Juries are trusted and regarded with special favor by the law over a single judge, because they are composed of a number of men carefully selected from among the people as plain, solid, intelligent, and honorable men, free from personal or political bias, and without individual ends to accomplish; and these framers of the jury system thought that through a jury the rights of all suitors of every class would be best defended, and all stand equal before the law. Corporations are lawful suitors, entitled to equal and exact justice at the

hands of the courts and juries; no more, no less. If juries do not do justice, and deliver unrighteous judgment, often we cannot help it, for we must deal sparingly and cautiously with their verdicts when dependent solely on the evidence. This case turns on evidence, not on law questions.

ENGLISH, PRESIDENT, (*dissenting*):

I cannot concur in the forgoing opinion for the following reasons: On the 5th day of September, 1896, an action was brought before a justice of the peace of Harrison county by Lavernia E. Young, administratrix of the estate of E. L. Young, deceased, against the West Virginia & Pittsburg Railroad Company. The case was submitted to a jury, which rendered a verdict in favor of the plaintiff for one hundred and twenty dollars. The defendent moved to set aside the verdict of the jury and award it a new trial, which motion was overruled, and the defendant excepted, and took a bill of exceptions in which said justice certified all the evidence heard on the trial, and rendered a judgment on said verdict on October 26, 1896, for one hundred and twenty dollars with interest from that day, and for thirty nine dollars and forty five-cents costs. The defendant thereupon applied for and obtained a writ of *certiorari* to such proceedings and judgment from the circuit court of said county, and upon the hearing of said writ of *certiorari* the judgment rendered by said justice was affirmed, with costs against the plaintiff in error, and thereupon it applied for and obtained this writ of error.

The facts upon which this action was predicated are, briefly stated, as follows: The husband of the plaintiff was riding in a buggy along the public road in said county of Harrison, which road ran parallel with and near to defendant's railroad. He was approaching a public crossing, and a passenger train on the railroad was also approaching the crossing in the same direction that the buggy was going. The plaintiff's intestate, in attempting to cross the railroad at said crossing, known as "Stewart's Crossing," in front of the locomotive, was struck by the same, and killed. The horse he was driving was also killed, and the buggy broken. This

suit was brought to recover damages for the injury to the buggy and for the loss of the horse, and raises the question as to the right of a party to recover damages for injuries done to a horse and buggy-driven by its owner in front of an approaching train at a public crossing. The accident occurred about the middle of the day. In this case, as has been stated, all of the evidence was certified. After the motion to set aside, the verdict was overruled; and this Court has held in the case of *Johnson* v. *Burns*, 39 W. Va., 659, (20 S. E. 686, fifth point of syllabus), that under section 9, chapter 131, of the Code, when exception is taken to the action or opinion of the court upon a question involving evidence upon a motion for a new trial or otherwise, all the evidence, whether conflicting or not, must be certified, and this Court must consider all such evidence on both sides, though conflicting; not rejecting any. If, upon such evidence, the finding of the jury plainly appears to be contrary to the evidence, or without sufficient evidence, or plainly against the decided and clear preponderance of evidence, it ought to be set aside, even though conflicting. The same, in substance, was held by this Court in the case of *State* v. *Zeigler*, 40 W. Va., 594, (21 S. E. 763). In pursuance of these rulings, let us look to the evidence certified, and ascertain what duty the defendant company owed to this traveler upon the public highway was left unperformed, or of what negligence it has been guilty towards the unfortunate man who lost his life at Stewart's crossing. No man seems to have seen this decedent as he approached the fatal spot, except George W. Stevens, who was fireman on the train, and he did not see him until he was within two hundred or three hundred feet of the crossing, and says that: "When we came in sight he was coming down towards the crossing in a trot with the horse, and just before he got to it a short distance he stopped and looked back towards the engine, and I supposed he was going to stop right then, and he did check his horse, and then he began to whip his horse and tried to cross ahead of us, and went at a gallop to make the crossing over the railroad." Were the statutory signals given by blowing the whistle and ringing the bell? Upon this question the following witnesses were examined for the plaintiff,

viz.: James Lynch, who, when asked if he heard any whistle after the train left Sand Cut, answered: "I don't think I did. My impression is, I did not." Lloyd Knight heard no whistle after the train left Sand Cut. Charles Ticknell heard no whistle after the train left Sand Cut. He was with Knight, three hundred yards away from the track. If there was any he did not notice it, and he stated on cross-examination that he could not tell whether they blew for the crossing. He heard the whistle, and did not know where he did whistle. Now, this was all of the evidence in behalf of plaintiff bearing on the question as to whether the whistle was blown for that crossing or not; while, on the other hand, this evidence was adduced for the defendant on that point: Mr. Whitescarver was a passenger on the train when the accident occurred, and testifies as follows: "I heard the whistle at the crossing, before the crossing, and I heard the toot,—short toot,— and the train stopped immediately afterward." He was then asked, "Was this whistle blown as you were approaching the crossing where the accident happened?" "Yes, sir. They whistled the warning for the crossing, and then the toot was right,—just quick, and then all over. That was right after it, though." Emory Brand was asked, "And you say you heard the whistle for Stewart's crossing?" and answered, "Yes, sir; that was the whistle for Stewart's crossing." He was also asked, "How many did you hear?" and replied, "I heard the proper signal for the crossing, which is two long, followed by two short, blasts of the whistle." William Paugh heard the whistle sounded between Sand Cut and Stewart's crossing. J. C. Martin states: "The whistle was blown for the crossing directly after we left Sand Cut, for I was standing in the door." J. L. Ruble states that when he got within forty feet of the whistling post, he blew the whistle. George Stevens, when asked, "What was done in the approach to Stewart's crossing as to whistling?" stated: "They blew the usual whistle signal for the crossing.". No less than six witnessess state that the whistle was blown for the crossing, and they heard it; while the witnesses for the plaintiff state they did not hear it, or did not notice, and Lee Mitchell for the plaintiff, on cross-examination said;

"Well, I could not tell you whether they blowed for the crossing. When they got on top of the hill there, I heard the engine shut off, and I do not know where he did whistle, I heard him whistle."

The testimony in this case affords an apt illustration of the difference between positive and negative evidence, of which Starkie, Ev. (9th Ed.) 867, says: "If one witness were positively to swear that he saw or heard a fact, and another merely to swear that he was present, but did not see or hear it, and the witnesses were equally trustworthy, the general principle would, in ordinary cases, create a preponderance in favor of the affirmative. * * * If, for instance, two persons should remain in the same room for the same period of time, and one of them should swear that during the time he heard a clock in the room strike the hour, and the other should swear that he did not hear the clock strike, it is very possible that the fact might be true, and yet each swear truly. It is not only possible, but probable, that the latter witness, though in the same room, through inattention, might be unconscious of the fact, or being conscious of it at the time, the recollection afterwards faded from his memory. It follows, therefore, by way of corollary to the last proposition, that in such cases, unless the contrary manifestly appear, the presumption in favor of human veracity operates in support of the affirmative." In this case six witnesses swore they heard the whistle blow, and five swore they did not hear it. Under the rule just quoted, the preponderance is with the defendant that the whistle was blown. George W. Stevens also states in his testimony that when they approached Stewart's crossing he rang the bell, and as soon as he saw plaintiff's decedent, he gave the alarm to the engineer, who applied the brakes; and in these statements he stands uncontradicted. This witness also states that, "when the deceased came in sight he was coming down towards the crossing in a trot with the horse, and just before he got to it a short distance he stopped and looked back towards the engine, and I supposed he was going to stop right then, and he did check his horse, and then began to whip his horse, and tried to cross ahead of us;" and, in answer to a question by a juryman as to how far

plaintiff's decedent was from the crossing when he told the engineer to stop, answered, "Maybe 30 or 40 feet, or something like that; maybe not so much as 30 feet." Now, this is all of the testimony as to the conduct of decedent on this occasion. Some buggy tracks are spoken of by one of the witnesses (Lloyd Knight), which showed that the buggy had been backed in towards Stewart's bars, just opposite the crossing, about twenty-five feet. The impression showed it had been the same track, then carried away by some fast speed. These impressions may have been made by his checking the horse near the crossing, and then whipping it into a gallop, to cross the railroad as stated by witness Stevens.

These are all the facts bearing on the conduct of those in charge of the train and the man in charge of the horse and buggy. Was the damage complained of caused by the negligence of those in charge of the defendant's train? Or was any omission of duty on their part the proximate cause of the death of the horse or injury to the buggy? The same rules apply, and the same law should control, our conclusion in this case as if the suit had been instituted for damages occasioned by the death of said E. L. Young. The principles governing this case are announced by this Court in the case of *Beyel* v. *Railroad Co.*, 34 W. Va., 538, (12 S. E. 532). It is there held: First. That "failure to ring a bell or blow a whistle on an engine, as required by the Code, c. 54, s. 61, is negligence for which a railroad company is chargeable; but this does not excuse a traveler on the highway crossing a railroad track from the exercise of such reasonable care and caution as the law requires to ascertain whether a train is approaching a crossing. Second. The traveler and the company have mutual and reciprocal duties and obligations in such case, and, though a train has the right of way, the same degree of care and diligence to avoid collision is due from both. *Improvement Co.* v. *Stead*, 95 U. S. 161. Third. It is the duty of the traveler on the highway crossing a railroad to look carefully for an approaching train; and, if looking leaves any doubt, or the view is obstructed, he must also listen before attempting to cross, otherwise he will himself be guilty of negligence which will prevent his recov-

ery for any injury received in crossing. Obstructions rendering the view obscure and unreliable call for greater caution on his part." Shearman & Redfield on the Law of. Negligence (volume 2, § 463), in discussing the relative duties of the traveler and the railroad as to public crossings, as I think, correctly states the law as follows: "The rights of a traveler on the highway at a point where it is crossed at a level by a railroad are subordinate to those of a railroad company so far as to require the traveler to give way to any train which is in sight or hearing, though not in such a sense as to give the company right to block up the highway; for its right is only given for the purpose of travel, not of storing its cars or goods. Both parties are equally bound to use ordinary care; that is, such care as a prudent man would usually take under similar circumstances,"—citing numerous authorities. The same author, section 26, says: "The breach of duty upon which an action is brought must be not only the cause but the proximate cause of the damage to the plaintiff." Now, there is no evidence in this case to show in any manner that there was any defect in the sight or hearing of said E. L. Young. The accident occurred at midday, and it further appears that he was familiar with the crossing. Witness Stevens says he checked the horse, and looked back, and he thought he was going to stop, but he whipped the horse into a gallop, attempting thus to cross before the train. . This action on his part clearly indicates that said Young saw the train and endeavored to cross the track before the train reached the crossing. Upon this question it was held, in the case of *Payne* v. *Railroad Co.*, 38 S. W. 308, which was decided by supreme court of Missouri, December 23, 1896, that: "Where a boy 11 years old, having his faculties, attempts to cross a railway track before a train, he is guilty of such contributory negligence as to prevent a recovery for injuries received thereby, though the railroad company was guilty of negligence in running its train at greater rate of speed than was permitted." In 45 N. E. 911, the case of *Chase* v. *Railroad Co.*, from the supreme judicial court of Massachusetts, decided January 9, 1897, is reported, in which it is held that: "In an action to recover for the death of a person killed at a railroad

crossing, the burden is on the plaintiff to show that the deceased exercised reasonable care, and that he was not guilty of contributory negligence. If there is anything to obstruct the view of the traveler on a highway at a crossing at grade, it is his duty to stop until he can ascertain whether he can cross with safety." Also that: "A person approaching a railroad crossing at grade, who was driving at a moderate trot, without stopping or slacking his speed, or looking or listening for an approaching train, until the horse was about to cross the track, when he attempted to stop it, and was struck and killed by an engine, held, that he was guilty of such negligence as to prevent recovery for his death." The court, in its opinion, says: "It is the general rule, in actions for negligence, and it is the rule in a case of a character of the present, that at least three things must concur before a liability arises. Negligence on the part of the defendant, which negligence is the proximate cause of the injury complained of, and that negligence of the person injured does not contribute to the injury," citing many authorities. In the case of *Grows* v. *Railroad Co.*, 67 Me. 100, the plaintiff, in his declaration, stated: "That, he being in a narrow, fenced lane, leading to the crossing over the defendant's railroad, and distant about 2½ rods from its track, perceiving defendant's train 40 rods from, but approaching, the crossing, he being distant 7 rods therefrom, attempted to cross the track before the train should reach it; that his attempt was unsuccessful, and he was injured. Held, on demurrer to the declaration, that on the plaintiff's statement of facts he was not in law entitled to recover." So, also, in the case of *Railroad Co.* v. *Bell*, 70 Ill. 103 (fourth point of syllabus), it was held: "It is the duty of persons about to cross a railroad to look about them, and see if there is danger; not to go recklessly upon the road; and to take the proper precautions themselves to avoid accidents at such places. If a party rushes into danger, which, by ordinary care, he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may receive."

In the case we are considering the evidence clearly shows that the defendant performed its duty by blow-

ing the whistle and ringing the bell-at the proper place and time; that every effort was made, by applying the brakes, to stop the train, when said Young was discovered approaching the crossing; but that he, instead of stopping his horse, and waiting until the train was gone, drove onto the crossing in front of the train, and thereby caused the injury complained of; and, considering these facts in the light of the authorities above quoted, the judgment complained of, in my opinion, should be reversed, and judgment should be rendered for the defendant.

*Affirmed.*