# CHARLESTON.

## Wagoner· *v*. Iaeger.

### Decided March .9, 1901.

1. Appeal—*Review—Challenge to Juror.*

   The verdict of a jury will not be set aside because of grounds of challenge against a juror which might have been known to the challenger or his counsel by the exercise of ordinary diligence; a failure to exercise such ordinary diligence being deemed equivalent to a waiver of the cause of challenge. (p. 62).

2. Cross-Examination—*Claimant of Property.*

   If the circuit court, by reason of a too rigid adherence to the technical rules of procedure, excludes the proper cross-eaxination of a claimant of property in controversy from the consideration of the jury, the judgment will be reversed, the verdict set aside, 'and a new trial awarded, unless the evidence, taken as a whole, including the excluded evidence, plainly and decidedly preponderates in favor of the verdict and does not involve the credibility of contradicting witnesses. (pp. 62-64).

Error to Circuit Court, McDowell County.

Action by W. G. W. Iaeger against Edward Rice and another. J. M. Wagoner filed a petition claiming ownership of property levied on. Judgment for claimant and Iaeger brings error.

*Reversed.*

Flournoy, Price & Smith, for plaintiff in error.

Rucker & Keller and D. F. Strother, for defendant in error.

Dent, Judge:

J. M. Wagoner filed his petition in the circuit court of McDowell County claiming the ownership of certain lumber levied on by W. G. W. Iaeger, as the property of Edward Rice and A. B. Rice, partners.

On issue made up as to the ownership of the property a jury found a verdict in favor of Wagoner and the court rendered its judgment accordingly. Iaeger now claims the court erred in not sustaining his motion to set aside the verdict for two reasons. 1st. Because one of the jurors was a defendant in a certain

ejectment suit brought by him in the United States Circuit Court which was still pending and undecided, and which fact was unknown to him until after the verdict was rendered. 2d. Because of evidence improperly excluded from the jury to the court.

As to the first of these errors, it is sufficient to say that plaintiff by the exercise of ordinary diligence could certainly have ascertained that the juror was a defendant in an ejectment suit brought by himself, as well before the trial as after it. He had all the means of information in his power, and it is not a violent presumption that a plaintiff does know the names of the persons against whom his suits pending. Iaeger does not state in his affidavit that he could not have known by ordinary. diligence that the juror complained of was a defendant in such ejectment suit, but simply states that he did not know that he was until after the trial. This renders the affidavit wholly insufficient. For it must appear from the affidavit or the circumstances of the case that a litigant objecting to the qualification of a juror because of personal enmity from any cause exercised reasonable diligence to ascertain such disqualification prior to the trial. 1 Thompson on Trials, 120. Also that such disqualification was unknown both to himself and counsel before the juror was accepted, and used in the trial.

As to the second ground, it appears from the record that while Wagoner was on the witness stand being examined in his own behalf and had been examined in chief and cross examined on re-examination, his testimony in part was as follows, by question and answer:

Q. "Who paid for that timber out of which that lumber was manufactured that was attached in this case?"

A. "I paid for it."

Q. "How did you pay for it?"

A. "In checks and money."

On re-cross examination his testimony in part was as follows:

Q. "Who deposited the money at Bluefield?"

A. "I deposited it."

Q. "In your own name?"

A. "Yes, sir."

Q. "Did you deposit in money?"

A. "I deposited in money, or in drafts, or in checks."

Q. "Whose drafts were they?"

A.   "Well, I would have to go over my list to tell you."

Q.   "Had you any of Rice Brothers' drafts?"

A.   "Yes, sir."

Q.   "How many?"

A.   "I had one of two hundred and fifty dollars."

Q.   "Any more?"

A.   "I will have to look over my book, and then I can tell you how many I did have. (Here he refers to book.)   I had——"

Plaintiff by counsel objects, and here moves to exclude the foregoing three questions, and the answers thereto, as being improper on re-cross examination.   Motion is sustained.   Exception.

This testimony was admissible as tending to show that Rice Brothers had furnished the money to pay for the timber from which the lumber in controversy was manfactured.   The only objection to its admission seems to be because the inquiries had not been made before.   This objection coming from the claimant of the lumber as to his own testimony was not only technical, but extremely finical, and would rather seem to indicate a disposition to prevent the court from knowing the truth as to the witness's transactions with Rice Brothers.   The question of inquiry before the court was as to whether the witness was attempting to claim as his own lumber which was properly subject to Iaeger's attachment as the property of Rice Brothers.   This was a fact, the real truth of which was known to the witness claimant, and therefore the court should not have permitted him to shield himself from the most rigid cross-examination behind mere technical rules of procedure.   In the interest of justice, the court was entitled to the whole truth, that the facts in issue might be properly presented to the jury.   While the verdict of a jury will not be reversed on account of the admission of improper or incompetent testimony, if it is sustained by the proper and competent testimony a different rule prevails where proper and competent testimony has been excluded from the consideration of the jury.   The court cannot undertake to say what weight the excluded evidence might have had with the jury had they been allowed to consider it.   Sometimes in contested cases with the evidence conflicting and contradictory as in this case, the the verdict of the jury may be influenced one way or another by trifles light as air, and for the court to weigh such excluded testimony together with all the other testimony in the case would

be a clear invasion of the province of the jury or rather to the denial of a jury trial. Yet the court might be justified in doing so if it were possible to say from the whole evidence including that which was excluded that it plainly preponderated in favor of the verdict. In such case a new trial would be useless, for if the verdict on a re-trial should be adverse to the plain preponderance of the evidence the court would have to set it aside. In the present case the court cannot say that the plain preponderance of the testimony taken as a whole sustains the verdict, for the reason that the credibility of numerous contradicting witnesses is involved and this is a question plainly within the province of the jury. *Young* v. *Railroad Co.,* 44 W. Va. 218. In the case of *Corder* v. *Talbott,* 14 W. Va. 277, this Court held that "If in common law suit the court rejects improperly evidence offered by the defendant, and the jury find a verdict for the plaintiff such verdict should be set aside on a motion by the defendant for a new trial, even though the court believes that the verdict of the jury ought not and would not have been different had the rejected evidence been considered by the jury." The reason for this holding is that the court may not substitute its judgment for what might be the verdict of a jury. The defeated party is entitled to have all his evidence heard and passed upon by the jury, and if he is denied this right in the lower court the only remedy is for this Court to reverse the judgment, set aside the verdict and award a new trial.

The same rule prevails when the lower court by a too strict adherence to mere technical rules prevents the rigid cross-examination of a claimant of property levied on as the property of another. Such rules are adopted to promote the ends of justice and not as a shield for those attempting to defeat such ends.

The careful cross-examination of an honest claimant on the witness stand can do him no harm, although not strictly technical in procedure, while it may lead a dishonest claimant to make an unwitting disclosure of the truth, or of such facts as will secure a just determination of the controversy.

The circuit court in the exercise of a sound discretion plainly erred in excluding the claimant's testimony given on re-cross examination at the instance of such claimant, and for this reason the judgment is reversed, the verdict set aside, and a new trial is awarded.

                                            *Reversed.*