# CHARLESTON.

COUCH v. CHESAPEAKE & O. RY. CO.

45   51
46   359

Submitted January 15, 1898—Decided April 20, 1898.

RAILROADS—*Accident—Damages.*

Error to Circuit Court, Kanawha County.

Action by James H. Couch, Jr., administrator, against the Chesapeake & Ohio Railway Company. Defendant had judgment, and plaintiff brings error.

*Affirmed, by Divided Court.*

BROWN, JACKSON & KNIGHT, C. B. COUCH, and J. H. COUCH, JR., for plaintiff in error.

SIMMMS & ENSLOW, for defendant in error.

DENT, JUDGE:

On a demurrer to evidence in the case of James H. Couch, Jr., administrator, etc., against the Chesapeake & Ohio Railway Company, the Circuit Court of Kanawha County gave judgment for the defendant. The plaintiff obtained a writ of error. The material part of the evidence is as follows: Frank Morris Hodge, an infant two years of age, was killed while sitting on the end of a cross-tie on the defendant's road, by one of defendant's freight engines. He had but a few moments prior thereto slipped away from the presence of his parents, who resided across the public road from the place of the accident. There were no obstructions in the way, and it was a bright, sun-

shiny afternoon, and the track was perfectly clear for about one-half mile; so there was nothing to prevent a person with good sight, keeping a lookout, from either seeing the child upon or close to the track, as his footprints showed in the ditch he had wandered along it for quite a distance. The fireman was busy firing the engine, while the engineer, whose duty it was to keep a lookout to avoid such accidents, testifies that he was keeping such lookout as was consistent with his other duties; that there was a glare of sunshine along the rails about a foot wide; that he did not see the child until he got within two hundred yards of it, too late to stop the train, and thought it was a chicken until it turned its head. The cylinder cock of the engine struck the child on the head, and killed it.

This case comes exactly within the rule established by this Court in the case of *Gunn* v. *Railroad Co.*, 42 W. Va., 676, (26 S. E. 546): "If a child trespassing on a railroad track is struck by an engine, the company is liable, if the engineer, by such careful and vigilant lookout as is consistent with other duties, could have seen the child in time to prevent the accident." "So if the child is going towards the track, or running near it, evidently going on it." The undisputed circumstances show that there was no natural object in the way to prevent the engineer from seeing the child. The situation therefore necessarily raises the presumption of negligence, and casts on the defendant the burden of showing that a proper lookout was kept, and the failure to see the child was occasioned by other fault than that of the engineer. The engineer testifies that the lookout was kept, and that he did not see the child until it was too late to save it. He was looking along the track. There was a glare on the rails about a foot wide, and when he got within two hundred yards, he saw something that looked like a chicken, but on closer observation turned out to be a child. If the testimony of the engineer is to be taken as true, then the court did right in sustaining the demurrer. But on whom does the law place the duty of weighing his testimony with the facts and circumstances surrounding the case, and determining his credibility? Not upon the court, but upon the jury. If the jury could say that the facts and circumstances are such, including

the appearance of the witness and his manner of testifying, as to rebut his testimony, and render it unworthy of belief, then the court should not have sustained the demurrer; for the credibility of the witnesses is not for the court to pass upon, but is wholly with the jury. *Scott* v. *Railroad Co.*, 43 W. Va., 484, (27 S. E. 211); *Akers* v. *DeWitt*, 41 W. Va., 229, (23 S. E. 669); *Johnson* v. *Burns*, 39 W. Va., 669, (20 S. E. 686); *Young* v. *Railroad Co.*, 44 W. Va., 218, (28 S. E. 932.)

If the undisputed facts and circumstances did not tend to contradict the evidence of the engineer, but corroborated it, then the court would sustain the judgment, not because of the evidence of the engineer or other witnesses, but because the corroborating facts render it unnecessary to pass on the weight of the oral testimony or the credibility of the witnesses. Such was the case of *Davidson* v. *Railway Co.*, 41 W. Va., 407, (23 S. E. 593). The engineer is an interested witness. His apparent negligence is the alleged cause of the accident. He would naturally want to relieve himself from blame and remain in good repute with his employers. His future employment might depend thereupon. The common law, through abundant caution, out of tenderness for the frailties of human nature, excluded the testimony of those in interest; not for the reason that all men, owing to interest, would swear falsely, but that many, under great temptation, would either testify falsely, color their evidence or suppress the truth. Our present law, with more confidence in the integrity of human nature, with but few exceptions, allows all witnesses, however great their interest in the result, to testify, and leaves their credibility and the weight to be given to their evidence to their fellow men who compose the jury. This is a duty that cannot be imposed on the court, and litigants have the right to have it exercised by the jury, where the law places it. If a party, by interposing his demurrer to the evidence, prevents the jury from passing on the credibility of his witnesses, he must be taken to have waived such credibility in so far as the same is contradicted by the facts and circumstances of the case. As to whether the engineer could have seen the child if keeping a proper lookout is a question of fact to be deter-

mined from the circumstances and evidence by the jury, and the circumstances in this case tend to show a proper lookout would have discovered the child in time to have saved it, and hence it is not a question of law for the court. Ordinary human experience will convince any one that if there was nothing to prevent it, and the engineer's sight was good, and he was keeping the proper lookout, he could have recognized this child at least one thousand five hundred feet away,—time and distance enough in which to have stopped his train and saved its life. The excuses he gives for not doing so were matters to be considered and weighed by the jury. The jury may have believed him, and found accordingly, but were prevented from doing so by the defendant, who thereby admits that their finding would have been adverse to the engineer's excuses. As said in the *Gunn Case*, unless we would have set aside the verdict of the jury if they had found for the plaintiff, we must reverse the judgment of the court, and give judgment for the plaintiff.

On the question of damages, the jury fixed the amount at five hundred dollars. The plaintiff assigns as error that the circuit court improperly gave the following instruction, to wit: "The court instructs the jury that in allowing damages in this case, where an infant of only two years of age has been killed by the negligence of defendant's employes, the jury shall not assess punitive, exemplary, or vindictive damages, nor shall it allow damage for the mental suffering or anguish of the parents as a consolation." This is clearly an unauthorized invasion of the province of the jury. The law says: "In every such action the jury may give such damages as they may deem fair and just, not exceeding ten thousand dollars." At common law, damages were not recoverable in such cases. By the English law, commonly called "Lord Campbell's Act," damages in satisfaction of pecuniary losses anticipated were recoverable. The Scotch law allowed punitive damages. Our first enactment on the subject (Acts 1863, c. 98, s. 2) provided that "in every such action the jury may give such damages as they shall deem fair and just, not exceeding $5,000.00, with reference to the pecuniary injury resulting from such death to the wife and next of

kin of such deceased person." In Code 1868, c. 103, s. 6,
the words "with reference to the pecuniary injury result-
ing from such death to the wife and next of kin of such
deceased person" are omitted. Acts 1882, c. 105, further
amends the law by increasing the amount of damages that
may be recoverable to $10,000. The laws of the various
states are very much at variance on the question. The
majority, following the English act, give merely pecuniary,
while a respectable minority give punitive, damages. Our
statute is taken from that of Virginia, and the courts of
that state have held that punitive and consolatory damages
are proper, contrary to the instruction given in this case.
*Railroad Co. v. Wightman*, 29 Grat., 431; *Railroad Co. v.
Noell*, 32 Grat., 394. In the case of *Simmons* v. *McCon-
nell*, 86 Va., 494, (10 S. E. 838) the court refers to and ap-
proves the former cases, and adds: "The 1 aw   v i r.es
no measure of damages other than the enlightened con-
science of impartial jurors guided by all the facts and cir-
cumstances of the particular case."

As to the character and amount of damages, the legisla-
ture has full control. *Mayer* v. *Frobe*, 40 W. Va., 246, (22
S. E. 58). It might have provided that the damages should
be wholly punitive, vindictive or exemplary; and it would
probably have been better to have so done. Death of near
relatives produces vague, uncertain, and nonascertainable
pecuniary losses, and damages founded thereon are very
uncertain, and tend to produce confusion and false swear-
ing; while punitive damages, measured by the loss inflicted
and the degree of negligence causing the same, would be
much more reasonable, exemplary and satisfactory, pun-
ishing the wrongdoer for the preservation of human life
and the prevention of unnecessary homicide. The legis-
lature, having great confidence in the integrity and purity
of the jury system, and a full reliance on the intelligence,
moral uprightness, clear sense of justice, and impartiality
of their fellow citizens when called upon, in the capacity of
jurors, to sit in solemn judgment upon the lives, liberty
and property of others, clothed the jury with full power
to determine the amount and character of damages that
should be imposed upon a wrongdoer who by his negli-
gence caused the death of his neighbor; the only restric-

tion imposed being that such damages should not exceed ten thousand dollars. In doing so, it was the plain and expressed intention to take away from the courts' all power to control the jury either as to the amount or character of the damages to be inflicted. The court is thus inhibited from instructing the jury that they should give or withhold punitive, consolatory, pecuniary or compensatory damages. This is their sacred province, in which they are the supreme judges. In the case of *Turner* v. *Railroad Co.*, 40 W. Va., 693, (22 S. E. 89) it is said: "The doctrine of punitive damages should be the same in cases where death ensues from acts of negligence as where it does not ensue,"—citing *Mayer* v. *Frobe*, 40 W. Va., 246, (22 S. E. 58); *Ricketts* v. *Railway Co.*, 33 W. Va., 433, (10 S. E. 801); *Downy* v. *Railroad Co.*, 28 W. Va., 732, 733. And also in point 6 it is held that "in all cases of negligence the law governing the assessments of exemplary, punitive, or vindictive damages is the same whether death result or not." To this should be added, "except as modified by legislative enactment," which was certainly understood to be an exception to the principle stated; for this rule as stated is good argument for counsel to make to a jury when they are called upon, under the statute to say what damages they deem to be just and right, as an appeal to their intelligence and sense of justice under the circumstances of the case, but it is not proper, under the plain inhibition of such statute, for the court to give as matter of law controlling their finding. The jury may have disregarded the instruction, and found such damages as they deemed to be just and right. How this may be the court is unable to say, and the instruction being given in violation of the law, in prejudice of plaintiff's rights, and over his protest, must be held to be reversible error.

The question of imputed contributory negligence of the father, not being legally sufficient to bar his action, may be taken into consideration by the jury as a circumstance to be considered in determining the amount of damages to be assessed. This is also a matter under the circumstances of this case, entirely within the province of the jury; and as it affects the measure of the damages, it would be error for the court to give them any instruction in regard

thereto. It is certain that this Court, in the light of the evidence presented, cannot say that the father's negligence with regard to the care of his child was so great as to bar any recovery. And especially is this true in view of the principle stated in the case of *Carrico* v. *Railway Co.*, 39 W. Va., 86, (19 S. E. 571) to wit: "Though a plaintiff be chargeable with negligence contributing to the injury, yet if the defendant know of the danger to the plaintiff arising from his negligence, and can by ordinary care avoid the injury, but does not, he is liable for his negligence notwithstanding the plaintiff's negligence." This rule applies as well, not only where the defendant knew of the plaintiff's prior negligence, but where he could have known of the same had he been discharging the duty the law imposed on him, to wit, in this case, keeping a proper lookout for trespassers upon the track. The defendant is in the enjoyment of vast public franchises for private gain. While it bestows great benefits on the public for privileges granted, its primary object the increase of the individual wealth of its stockholders. In the exercise of its franchise, the public permits it to rush its heavy trains with immense speed over its track through all portions of the country, but, as a precedent condition thereto, imposes on it the duty of keeping a lookout for unwary and helpless trespassers upon its right of way. This just duty it must require its employe to perform, or endure the consequences of their negligence by a forfeiture of a reasonable portion of its gains, which the public bestows upon those who suffer most because of the neglected duty. This is the way the public has provided for the enforcement of its mandates.

In the foregoing opinion McWhorter, Judge, concurs; but, Judges Brannon and English being of the opinion that the judgment of the circuit court should not be disturbed, it stands affirmed by operation of law.

Brannon, President:

Frank Morris Hodge, a child two years old, was killed while sitting on the end of a cross-tie, by a freight train on the Chesapeake & Ohio Railway, April 18, 1896, and his

administrator sued the railroad company for damages, and, upon defendant's demurrer to the evidence, judgment was rendered for defendant. I do not consider the *Gunn Case*, 42 W. Va., 676 (26 S. E. 546), as controlling this case. In that case it was settled that two children, five and six years old, and more easily seen than this small child, were sitting on a trestle, plain to be seen, at the time they were killed, and had been for 15 minutes before; whereas it is impossible to say when this little child got upon the end of the cross-tie. It had walked, as shown by its tracks, one hundred and eighty feet along the ditch, two feet deep, and climbed up the enbankment of the roadbed, two feet high; and why may we not say, from these known, fixed facts, that the engineer did not probably see it until within two hundred yards of it? In the *Gunn Case*, whether the engineer did see the children or not, he could have done so by reasonable diligence, and should have done so, and therefore the company was liable; but in this case no evidence tells us when the child got upon the cross-tie so as to be seen. Then how can we say that the engineer could have seen it? He likely could not have seen it in the ditch, two feet deep; and it might have been in the act of crawling up the roadbed hidden by the ties, until the train was within two hundred yards, so that until then it could not have been seen. Thus, we cannot convict the company till we can say either that the engineer did see the child or could have done so. The dress of the child was brown, about the color of the sand and gravel of the roadbed. The engineer says he first saw it when two hundred yards from it, and even then thought it was a chicken, when later it turned its head, and he saw it was a child,—too late to stop this train, of engine and thirty cars, to save it. He says the rail made a glare before the train in the bright sunshine, and hindered his sight. There is no contradictory evidence as to this. Would the engineer willfully run over and murder the child? The human heart revolts at such a deed, and disbelieves it, and the least liberality tells us that the engineer did not in fact see him before it was too late; and, as above stated, we cannot say that the child was long enough where he could be seen to say that the engineer

could have seen him.   For these reasons, JUDGE ENGLISH andIaffirm the judgment.   *Norfolk Co.* v. *Dunnaway,* 93 Va., 29 sustains me, holding where a boy eleven years old lying between cross-ties was killed, that the company is not bound to reduce speed or stop when an object is seen on track which it has no reason to believe is, but by possibility may be, a human being.

*Affirmed by Divided Court.*