584 S.E.2d 226

**Naomi MCDAVID, on her own behalf and as the personal representative of Oney McDavid, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 30740.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided July 3, 2003.

Concurring Opinion of Justice Maynard July 7, 2003.

Stuart Calwell, Esq., David H. Carriger, Esq., Law Office of Stuart Calwell, Charleston, West Virginia, Attorneys for the Plaintiff.

Kasey Warner, United States Attorney, Stephen M. Horn, Sandra Henson Kinney, Assistant United States Attorneys, Charleston, Ray L. Hampton, II, Special Assistant United States Attorney, Huntington, West Virginia, Attorneys for Defendant.

STARCHER, Chief Justice:

This case is before the Court upon a question certified from the United States District Court for the Southern District of West Virginia. By order entered December 17, 2001, the district court presented the following certified question:

> Whether a decedent's beneficiaries may recover damages for a decedent's pain and suffering, incurred between the time of injury and the time of death, where the injuries result in death but the decedent did not institute an action for personal injury prior to his or her death?

After careful consideration of West Virginia's wrongful death and survival statutes, *W.Va.Code*, 55–7–5 to –8a (the "wrongful death act"), and the pertinent authorities, we answer the certified question in the affirmative. We hold that in a wrongful death action, a decedent's beneficiaries may recover

damages for a decedent's pain and suffering, endured between the time of injury and the time of death, where the injury resulted in death but the decedent did not institute an action for personal injury prior to his or her death.

## I.

### Facts & Background

The plaintiff, Naomi McDavid, on her own behalf and as the personal representative of her deceased husband, Oney McDavid ("the decedent"), contends that in October 1999, the decedent received an x-ray at the Veterans Administration Medical Center in Huntington ("VA hospital"). The x-ray revealed an opacity on the decedent's right lung. According to the plaintiff, the decedent was told not to worry about the opacity and no further tests were ordered at that time.

In January 2000, the decedent went to his family doctor complaining of a cough. At that time, an x-ray revealed that the opacity had tripled in size. It was subsequently discovered to be cancerous. The decedent died of lung cancer on July 11, 2000.

On August 17, 2001, the plaintiff filed an action against the defendant, the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., in the district court.[1] The plaintiff alleged that the defendant, acting through its employees, the physicians at the VA hospital, "failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent physician[s] and/or medical facility in acting in the same or similar circum- stances, including, but not limited to, in its treatment, and failure to treat" her husband, and that this negligent treatment caused her husband's death. The plaintiff further alleged, inter alia, that the defendant's negligence caused the decedent pain, suffering, loss of enjoyment of life, and emotional distress.

The defendant subsequently filed a motion to dismiss the plaintiff's claim for pain and suffering. The defendant argued that because the decedent did not file a personal injury action prior to his death, his cause of action for personal injury damages died with him and the plaintiff is now prevented from pursuing those damages by the terms of the West Virginia wrongful death act. The plaintiff asked the district court to certify the question whether she may recover damages under the wrongful death act for the decedent's pain and suffering endured between the time of the defendant's alleged negligence and the decedent's death.

By an order dated December 17, 2001, the district court denied without prejudice the United States' motion to dismiss the plaintiff's claim for the decedent's personal injury damages, and found that the claim was an appropriate issue to certify to this Court. After inspecting the district court's order, we determined that the question should be reviewed.[2] We now discuss the reasons for our answer to the certified question.

## II.

### Standard of Review

■ This Court employs a plenary standard of review when we answer certified

---

1. As the plaintiff's claims are against the United States, her action falls under the Federal Tort Claims Act which grants to federal district courts jurisdiction over claims that are "for money damages ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

2. According to W.Va.Code, 51–1A–3 [1996]:
 The supreme court of appeals of West Virginia may answer a question of law certified to it by any court of the United States ... if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state. We find that our answer to the certified question is determinative of an issue in the plaintiff's case in the district court. We further find that there is no controlling precedent as to whether the wrongful death act permits a decedent's beneficiaries to recover for damages for a decedent's pain and suffering where the decedent did not institute a personal injury action prior to his or her death. Consequently, certification is a proper means to determine this issue.

questions. In Syllabus Point 1 of *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998), we held that "[a] de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Also, the certified question before us requires us to construe the wrongful death act. We have held that "[w]here the issue ... is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

### III.

### *Discussion*

The parties in the instant case dispute whether a decedent's beneficiaries can, in a wrongful death action, recover damages for the decedent's pain and suffering caused by the wrongful act, neglect or default of the defendant, and endured between the time of the wrongful act, neglect or default and the time of death, where the decedent did not initiate a personal injury action to recover those damages prior to the time of death. In *Estate of Helmick by Fox v. Martin*, 188 W.Va. 559, 425 S.E.2d 235 (1992), we concluded that under the wrongful death act a decedent's beneficiaries could recover damages for a decedent's pain and suffering, if the decedent initiated a personal injury action prior to his or her death. We left unanswered the question raised by the parties in this case, stating that "[w]e need not resolve at this time the remaining question of whether pain and suffering is recoverable where the action is not filed until after the decedent's death." 188 W.Va. at 563 n. 10, 425 S.E.2d at 239 n. 10.

The defendant argues that the wrongful death act, and our interpretation of those laws in *Helmick*, requires a decedent to initiate a personal injury action before death in order to recover for losses incurred by the decedent's estate during the time period between the wrongful act, neglect or default of the defendant and the decedent's death. The defendant argues that if the decedent does not file a personal injury action for those losses prior to death, then the cause of action dies with the decedent.

The plaintiff argues that the defendant is urging a harsh and absurd construction to the wrongful death act. The plaintiff asserts that the logical outcome of the defendant's argument is that plaintiffs' lawyers will rush to file lawsuits whenever a client is injured and there is a chance the client will die, and that those lawsuits will be filed before the plaintiffs' lawyers have a chance to properly investigate and determine whether the lawsuits have any merit. The plaintiff suggests that a decedent's failure to file a lawsuit before dying—whether born of the decedent's disdain for litigation, or an inability to reach the courthouse before dying—should not affect the beneficiaries' ability to recover the full damages that the decedent could have recovered, had he or she survived the defendant's wrongful act, neglect or default.[3]

In construing the wrongful death act, as with any statutory scheme, "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syllabus Point 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). In addition, "[i]t is a cardinal rule of construction governing the interpretation of statutes that the purpose for which a statute has been enacted may be resorted to by the courts in ascertaining the legislative intent." Syllabus Point 4, *State ex rel. Bibb v. Chambers*, 138 W.Va. 701, 77 S.E.2d 297 (1953). "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being

---

3. The plaintiff briefly mentions that the defendant's interpretation of the wrongful death act might implicate constitutional equal protection provisions. Our research suggests that such a construction might also raise concerns under the open courts provision of our *Constitution*, W.Va. *Const.*, art. III, § 17. As the court stated in Syllabus Point 3 of *Wilfong v. Omaha & Council*

*Bluffs St. Ry. Co.*, 129 Neb. 600, 262 N.W. 537 (1935), "courts of this state must be open at all times to afford a remedy ... without reference to and wholly unaffected by the subsequent death of ... the party wronged. Therefore, an action for damages commenced by an administrator, after the death of the intestate, for pain and suffering inflicted upon such deceased is maintainable."

presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

■ The wrongful death act is a remedial statutory scheme. Accordingly, as we stated in Syllabus Point 6 of *Bradshaw v. Soulsby*, 210 W.Va. 682, 558 S.E.2d 681 (2001), "Because the wrongful death act alleviates the harshness of the common law, it is to be given a liberal construction to achieve its beneficent purposes." *In accord, Farley v. Sartin*, 195 W.Va. 671, 680, 466 S.E.2d 522, 531 (1995) ("[O]ur prior decisions ... firmly established that W.Va.Code, 55–7–5, is a remedial statute and should be liberally construed."); *Martin v. Smith*, 190 W.Va. 286, 292, 438 S.E.2d 318, 324 (1993) ("West Virginia's wrongful death statute is remedial, and is liberally construed to effect the Legislature's intent."); *Baldwin v. Butcher*, 155 W.Va. 431, 184 S.E.2d 428 (1971); *City of Wheeling ex rel. Carter v. American Casualty Co.*, 131 W.Va. 584, 590, 48 S.E.2d 404, 408 (1948) ("The statute, being remedial, should be liberally construed."); *Wilder v. Charleston Transit Co.*, 120 W.Va. 319, 322, 197 S.E. 814, 816 (1938) ("The policy of the statute is remedial and not punitive."); *Richards v. Riverside Iron Works*, 56 W.Va. 510, 515, 49 S.E. 437, 438 (1904) ("The statute is remedial, and should be construed liberally for the purpose of carrying out the legislative intent.").

4. To be clear, we do not now believe that this oft-repeated statement of the English common law is necessarily immutable. In Syllabus Point 1 of *Powell v. Sims*, 5 W.Va. 1 (1871), we stated that "[t]he common law of England is in force in this State only so far as it is in harmony with its institutions, and its principles applicable to the state of the country and the condition of society." As Justice Holmes succinctly reflected, "[t]he common law is not a brooding omnipresence in the sky but the articulate voice of some sovereign or quasisovereign that can be identified." *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 222, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) (Holmes, J., dissenting).

With these standards in mind, we now examine the damages that are available under other states' wrongful death acts, and under our own act.

## A.

### *Wrongful Death Acts Generally*

The great majority of our cases discussing the wrongful death act have recited, or been decided upon, the statement that "no right of action for death by a wrongful act existed at common law[.]" *Baldwin v. Butcher*, 155 W.Va. 431, 433, 184 S.E.2d 428, 429 (1971). *See also, Farley v. Sartin*, 195 W.Va. 671, 466 S.E.2d 522 (1995); *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973); *City of Wheeling ex rel. Carter v. American Cas. Co.*, 131 W.Va. 584, 48 S.E.2d 404(1948); *Swope v. Keystone Coal & Coke Co.*, 78 W.Va. 517, 89 S.E. 284 (1916).

The genesis of this oft-recited statement is generally agreed to be contained in dicta in the 1808 case of *Baker v. Bolton*, 1 Campb. 493, 170 Eng.Reprint. 1033 (1808), where the court indicated that "in a civil court, the death of a human being could not be complained of as an injury." S. Speiser, et al., 1 *Recovery for Wrongful Death and Injury*, § 1.1 at 1–4 (3d. Ed., 1992). The English judge's "off-hand remarks became the basis for the so-called American common law rule that there could be no recovery for wrongful death in the absence of statute. This became a magical intoned incantation recited by rote, without any critical examination, by hundreds of decisions in the various courts throughout the length and breadth of the United States." *Id.*[4]

We have since made clear that our courts retain the power to change the common law, holding in Syllabus Point 2 of *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979) that "Article VIII, Section 13 of the West Virginia Constitution and W.Va. Code, 2–1–1, were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law." *See also*, James Audley McLaughlin, "The Idea of the Common Law in West Virginia Jurisprudential History: *Morningstar v. Black & Decker Revisited*," 103 W.Va. L.Rev. 125 (2000).

To remedy the harsh effect of *Baker v. Bolton* and cases that followed in its footsteps, in 1846 the English Parliament passed "Lord Campbell's Act" to create a statutory remedy for a wrongful death. Entitled "[a]n act for compensating the families of persons killed by accidents," the statute stated that:

> ... whensoever the Death of a Person shall be caused by wrongful Act, Neglect, or Default and the Act, Neglect, or Default is such as would (if Death had not ensued) have entitled the Party injured to maintain an Action and recover Damages in respect thereof, then and in every such Case the Person who would have been liable if Death had not ensued shall be liable to an action for Damages[.]

Lord Campbell's Act, 9 & 10 Vict. Ch. 93, *quoted in* S. Speiser, 3 *Recovery for Wrongful Death and Injury*, Appendix A at 1. The Act allowed the wife, husband, parent or child of the decedent to receive in a jury action "such Damages as they [the jury] may think proportioned to the Injury resulting from such Death to the Parties respectively for whom and for whose Benefit such Action shall be brought[.]" *Id.*

Wrongful death statutes modeled after Lord Campbell's Act were first enacted in the United States in 1847, beginning with New York. A law similar to Lord Campbell's Act was proposed by the Virginia Legislature in 1849, but did not pass.

### B.

*Damages under other States' Wrongful Death Acts and Survival Statutes*

Although generalizations are not easy to draw among the fifty-one wrongful death statutes [in the United States], they are capable of being grouped into two major classifications: those, representing the majority, that determine damages based on the loss to the survivors of the decedent or statutory beneficiaries; and those that calculate damages based on the loss to the estate of the decedent.

1 *Recovery for Wrongful Death and Injury*, § 3.3 at 3–9.

The majority of wrongful death acts, particularly those patterned after Lord Camp-bell's Act, award damages based upon a "loss-to-survivors" theory. Under these statutes, damages generally are to be assessed in accordance with the loss to the decedent's survivors, with many states limiting recovery to the pecuniary losses of the decedent's survivors caused by the decedent's death. *Id.*, § 3:7 at 3–24—25.

The minority of wrongful death acts measure damages by the loss to the decedent's estate. *Id.*, § 3:4 at 3–14. These wrongful death acts allow for the estate to recover its losses—such as lost income, funeral expenses, medical expenses, or any other damages related to the decedent's fatal injury. *Id.*, § 3:57 at 3–211.

States enacted wrongful death acts as a response to the failure of the common law to provide a remedy for wrongful death. However,

> ... there was a corresponding failure in the common law to provide a remedy for personal injuries to a person who died either before bringing or before completing a personal injury action. At common law, the action or cause of action for such injury would abate and be forever lost if the injured person died before the action was commenced or before judgment was entered therein.

3 *Recovery for Wrongful Death and Injury*, § 14:1 at 2. States responded by enacting "survival" statutes to allow a decedent's survivors to pursue a cause of action that belonged to a decedent, but was not pursued or completed when the decedent died. Most survival statutes provide that "an action for personal injuries ... does not abate upon the death of either the injured party or the person liable.... Such statutes do not usually make any distinction between actions for fatal injuries (where the injury sued upon causes death) and actions for non-fatal (where the injured person dies from a cause other than the injury sued upon) injuries." *Id.*, § 14:4 at 10.

There are substantial conceptual differences between the remedies provided by a wrongful death act and a survival statute. "Wrongful death acts compensate either the survivors, or the estate of the deceased, for

losses they have sustained. Survival statutes ... permit recovery ... for damages which the *decedent* could have recovered had he lived.... [T]he survival statute merely *continues* in existence the injured person's claim after death as an asset of his estate, while the usual wrongful death statute creates a new cause of action ... based upon the death itself." *Id.*, § 14.1 at 3.

The majority of states now hold that the representative of a decedent's estate may contemporaneously bring both a wrongful death action—to recover for losses to the decedent's survivors—and an action under the survival statute, to recover for losses to the decedent's estate. The majority of jurisdictions allow an action to recover losses to the decedent's estate that occurred in the lapse of time between the injury-causing wrongful act, and the decedent's death—and include such elements as the decedent's "pain and suffering, mental anguish, impairment of earning capacity, medical expenses, and, of course, funeral expenses, since the injury did cause these to be incurred[.]" 1 *Stein on Personal Damages, 3d. Ed.*, § 3:56 at 3–172 (West Group 1997).[5]

As a leading treatise on wrongful death acts summarizes: "It is the rule in a numerical majority of jurisdictions that damages for decedent's conscious pain and suffering prior to death may be recovered under both the survival statutes and the hybrid type of enlarged survival-wrongful death statute." 3 *Recovery for Wrongful Death and Injury*, § 14.8 at 27–31. *See also*, 1 *Stein on Personal Injury Damages, 3d Ed.*, § 3:57 at 3–173 ("[I]t is the rule in a vast majority of jurisdictions that damages for decedent's conscious pain and suffering prior to death may be recovered under survival statutes and the hybrid type of enlarged survival-wrongful death statutes.").

We now examine West Virginia's statutes, in light of the interpretations of similar statutes by other states.

### C.

### *Damages under the West Virginia Wrongful Death Act*

The West Virginia wrongful death act, *W.Va.Code*, 55–7–5 to –8a, is plainly patterned after Lord Campbell's Act, and was enacted in 1863 shortly after West Virginia separated from Virginia. The statute—then, as now—allows a cause of action "[w]henever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof[.]" *W.Va.Code*, 55–7–5 [1931].

In *Bradshaw v. Soulsby*, 210 W.Va. at 688, 558 S.E.2d at 687, we interpreted *W.Va.Code*, 55–7–5 to mean that in order "[t]o maintain an action for wrongful death, a beneficiary must show two specific elements: that a person has died, and that the death was caused by a wrongful act, neglect or default." The wrongful death action "shall be brought by and in the name of the personal representative of such deceased person[,]" and the damages are to be distributed to certain beneficiaries (including the decedent's surviving spouse, children, siblings, etc.). *W.Va. Code*, 55–7–6(a) [1992].

While the elements of the wrongful death cause of action remain the same, the damages available under our wrongful death act—found in *W.Va.Code*, 55–7–6(b) and (c)—have drastically changed since 1863. The character of those damages has also drastically changed, shifting from being based entirely upon the losses of the decedent's beneficiaries to now also include consideration of losses to the decedent's estate. *See Couch v. Chesapeake & O. Ry. Co.*, 45 W.Va. 51, 55, 30 S.E. 147, 149 (1898) ("As to the character and amount of damages, the legislature has full control.").

---

5. *Murphy v. Martin Oil Co.*, 56 Ill.2d 423, 308 N.E.2d 583 (1974) represents an example of a case brought under both a wrongful death act and survival statute. The decedent was severely burned in a fire at the defendant's gasoline station, and died nine days later. The decedent's beneficiaries sought wrongful death damages, and under the survival statute sought "damages for the decedent's physical and mental suffering, for loss of wages for the nine-day period following his injury and for the loss of his clothing worn at the time of injury." 56 Ill.2d at 425, 308 N.E.2d at 584. The Illinois court permitted the recovery of these damages.

In 1863, a jury award for a wrongful death in West Virginia was expressly limited to damages "with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person." *1863 Acts of the Legislature,* c. 98. In other words, a jury was limited to awarding damages that reflected the financial benefits that the decedent provided to his family; if the family had no "pecuniary injury" following the death of the decedent, there could be no recovery, and the family could not recover for any losses incurred by the decedent's estate. *See, e.g., Searle's Adm'r v. Kanawha & O. Ry. Co.,* 32 W.Va. 370, 376, 9 S.E. 248, 251 (1889) ("[D]amages must be assessed with reference to the pecuniary loss resulting from the death of the person injured, and that neither the physical pain of the deceased nor the mental sufferings of the surviving family can be taken into the estimate.").

The Legislature expanded the damages available under the wrongful death act in 1868, leaving out the "pecuniary injury" language and declaring that "in every such action the jury shall give such damages as they shall deem fair and just, not exceeding five thousand dollars." *1868 Acts of the Legislature,* c. 105. The statute was again adjusted in 1882, to allow a jury to award damages "they shall deem fair and just, not exceeding ten thousand dollars." We interpretated these changes to mean that the Legislature had expanded the categories of damages recoverable from "pecuniary losses" of the beneficiaries to any "fair and just" losses of the beneficiaries—for example, losses such as the grief and anguish of bereaved parents. *See, e.g.,* Syllabus Point 2, *Kelley v. Ohio River Railroad Co.,* 58 W.Va. 216, 52 S.E. 520 (1905) ("In an action in behalf of a father for [a railroad] killing his son by wrongful act or negligence, the jury is not confined to compensatory damages for mere pecuniary injury, but may consider the sorrow, the mental

distress, and bereavement of the father."); *Lester v. Rose,* 147 W.Va. 575, 600–01, 130 S.E.2d 80, 97 (1963) ("This Court, in construing that statute, held on numerous occasions that it was not necessary to prove pecuniary damages for a recovery in such cases up to $10,000.00, and that it could be based [on] sorrow, mental distress and bereavement.")

In 1955, the Legislature once again amended *W.Va.Code,* 55–7–6, and continued to limit verdicts to amounts the jury deemed "fair and just, not exceeding ten thousand dollars," but added a recovery for the "pecuniary loss sustained by" the beneficiaries so long as the total damages awarded did not exceed $20,000.00. *1955 Acts of the Legislature,* ch. 1. "It is clear that the amendment to this statute was not intended to limit but rather to increase the right of recovery in wrongful death actions." *Lester v. Rose,* 147 W.Va. at 601, 130 S.E.2d at 97. Again, the damages juries were permitted to award were focused exclusively on the losses of the beneficiaries, not the losses to the decedent's estate.

After 1955, the Legislature continued to allow juries to award "fair and just" damages to the decedent's beneficiaries, but began to alter the character of the award from being relating to the losses of the beneficiaries, to being related to the losses of the estate of the decedent.[6] This is strikingly apparent in the text of the 1961 amendment to the damages statute. The 1961 amendment to *W.Va. Code,* 55–7–6 continued to allow the jury to award "fair and just" damages and damages for "financial or pecuniary loss" of the beneficiaries up to a maximum recovery of $25,000.00. However, the amendment went on to state:

Items of pecuniary loss or expenses recoverable under general law by the personal representative of the deceased *for the benefit of the estate of the deceased,* includ-

---

6. This Court also participated in the shift away from beneficiary-related damages to estate-related damages. While the 1955 version of *W.Va. Code,* 55–7–6 allowed a jury to award damages for the losses of the decedent's beneficiaries, we construed the statute to allow the jury to award damages for losses to the decedent's estate. We stated, in Syllabus Point 4 of *Stamper v. Bannister,* 146 W.Va. 100, 118 S.E.2d 313 (1961):

In actions for wrongful death, if the distributee or distributees of the decedent will suffer or have sustained a loss, such as where they are liable for or have paid medical, hospital and funeral expenses, or the estate of the decedent is diminished by the payment of same and its distribution to them has been diminished, evidence of such elements of damage is admissible in such actions.

ing but not limited to loss or expense caused by damage to property of the deceased, reasonable and necessary expense incurred in medical or surgical treatment, hospitalization, and burial of deceased shall not be admissible in evidence or considered by the jury in such action. Nothing herein contained shall bar the recovery of such items of loss or expense in an action proper for such purpose.

*1961 Acts of the Legislature*, ch. 2 (emphasis added). It appears from this enactment that the Legislature acknowledged and understood that damages such as medical expenses, funeral expenses, and property damages, were losses "of the estate of the deceased," and not losses of the deceased's beneficiaries. The Legislature therefore required the representative of the deceased's estate to pursue these damages for the estate in an action separate from the wrongful death action.

The damages recoverable in a wrongful death action were dramatically increased by the Legislature in 1965. The Legislature also altered the statute to expressly allow the beneficiaries to pursue, as part of a wrongful death action, damages for losses to the estate of the deceased in addition to damages for the losses of the beneficiaries. The 1965 amendment to *W.Va.Code*, 55–7–6 allowed a jury to award "fair and just" damages not exceeding $10,000.00, but allowed the jury to award "such further damages, not exceeding the sum of one hundred thousand dollars, as shall equal the financial or pecuniary loss sustained" by the decedent's beneficiaries. Furthermore,

... in addition to the damages awarded pursuant to the foregoing provisions hereof, the personal representative of the deceased shall be entitled to recover the reasonable funeral expenses of such deceased person and the reasonable hospital, medical and other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death.

*1965 Acts of the Legislature*, ch. 1. *See also 1967 Acts of the Legislature*, ch.2.

This Court has given an expansive interpretation to the language chosen by the Legislature in 1965. For instance, we have concluded that the 1965 amendments to *W.Va. Code*, 55–7–6 allow a decedent's beneficiaries to recover punitive damages for the wrongful act of the defendant, stating that "[t]he fact that the wrongful death statute never spelled out particular items of damages has not precluded this Court in the past from concluding that certain elements of damages could be obtained." *Bond v. City of Huntington*, 166 W.Va. 581, 592, 276 S.E.2d 539, 545 (1981). We allowed juries to award punitive damages because "if the defendant, acting recklessly, maliciously or wilfully, can be held liable for punitive damages if he injures the person, he ought to equally be held liable for punitive damages where the same quality of act kills the individual." *Id.*

The Legislature removed the monetary caps on damages in 1976, freeing the jury to award "such damages as to it may seem fair and just." *1976 Acts of the Legislature*, ch. 2. Furthermore, the Legislature completed its merger of the types of losses juries could consider in awarding fair and just damages, such that juries could consider losses to both the beneficiaries and the estate in one, consolidated award:

The verdict of the jury shall include, *but may not be limited to* damages for the following: (a) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (b) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (c) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (d) reasonable funeral expenses.

*Id.* (emphasis added). The statute has been amended several times since 1976, and the above provision is now found at *W.Va.Code*, 55–7–6(c)(1) [1992].[7]

7. *W.Va.Code*, 55–7–6 [1992] has been amended several times since 1976, finally in 1992, and now states, in pertinent part:

■ The effect of these amendments has been to allow juries to award damages for all losses flowing from the wrongful act, neglect or default of a defendant. The Legislature has enlarged the damages recoverable under *W.Va.Code,* 55–7–6 to permit juries to award damages that the deceased might have recovered had he or she survived the injury and brought the action, in addition to the damages resulting from the wrongful death. Juries are now clearly required by *W.Va.Code,* 55–7–6 to consider awarding fair and just damages for all losses—including but not limited to—losses to both the decedent's beneficiaries and to the decedent's estate. But of course, it is axiomatic that the jury is only allowed to award the decedent's beneficiaries one recovery for each loss. *See* Syllabus Point 7, *Harless v. First Nat. Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982) ("It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for

the same injury simply because he has two legal theories.").

■ By crafting the damages portion of the wrongful death act so broadly, the Legislature established the principle that juries have almost unfettered discretion in awarding damages for a death caused by the wrongful act, neglect or default of another.[8] "It is well settled in this jurisdiction that where the jury finds the defendant liable in a wrongful death action, it has absolute discretion, without regard to proof of actual damages, pecuniary loss and the like, to make any award it deems 'fair and just[.']" *Kesner v. Trenton,* 158 W.Va. 997, 1002, 216 S.E.2d 880, 884 (1975). As Justice Dent stated in *Couch v. Chesapeake & O. Ry. Co.,* 45 W.Va. 51, 30 S.E. 147, 149 (1898):

> The legislature, having great confidence in the integrity and purity of the jury system, and a full reliance on the intelligence, moral uprightness, clear sense of justice, and impartiality of their fellow citizens when called upon, in the capacity of jurors, to sit in solemn judgment upon the lives, liberty,

(b) In every such action for wrongful death, the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section. If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two of this code. If the jury renders only a general verdict on damages and does not provide for the distribution thereof, the court shall distribute the damages in accordance with the provisions of this subsection.

(c)(1) The verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospital-

ization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

(2) In its verdict the jury shall set forth separately the amount of damages, if any, awarded by it for reasonable funeral, hospital, medical and said other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death, and any such amount recovered for such expenses shall be so expended by the personal representative.

8. The jury's verdict is not, of course, unreviewable, and a court may set aside a verdict if it appears "that the jury was actuated by passion, prejudice, or corruption." *Hawkins v. Nuttallburg Coal & Coke Co.,* 66 W.Va. 415, 416, 66 S.E. 520, 521 (1909). *See, e.g., Roberts v. Stevens Clinic Hosp., Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986) (excessive verdict). As we held in Syllabus Point 5 of *Turner v. Norfolk & W.R. Co.,* 40 W.Va. 675, 22 S.E. 83 (1895):

> The action of the jury in assessing damages in case of the death of a person by the wrongful act, neglect, or default of another is not reviewable, as no damages allowed by the jury within the limit fixed by the statute can be deemed excessive, their determination of this question being absolute and exclusive as to what damages are fair and just, unless the verdict evinces passion, prejudice, partiality, or corruption on the part of the jury.

and property of others, clothed the jury with full power to determine the amount and character of damages that should be imposed upon a wrongdoer who by his negligence caused the death of his neighbor.... In doing so, it was the plain and expressed intention to take away from the courts all power to control the jury either as to the amount or character of the damages to be inflicted. The court is thus inhibited from instructing the jury that they should give or withhold punitive, consolatory, pecuniary, or compensatory damages. This is their sacred province, in which they are the supreme judges.

We now turn to the arguments of the parties.

### D.

*Damages for Pain and Suffering under the West Virginia Wrongful Death Act*

The parties in the instant case essentially debate whether a decedent's beneficiaries can, through our wrongful death act, recover damages for losses incurred by the decedent's estate due to the wrongful act, neglect or default of the defendant, damages that are not specifically listed in *W.Va.Code*, 55–7–6— namely personal injury damages for the premortem pain and suffering of the decedent— when the decedent did not file an action for those damages prior to death.

The defendant's argument is based upon *W.Va.Code*, 55–7–8 [1989], which was enacted by the Legislature as a limited form of a survival statute.[9] In *Estate of Helmick v. Martin, supra,* we concluded that "West Virginia Code § 55–7–8 specifically provides that a recovery shall be had for damages such as pain and suffering which are not

otherwise provided for under the wrongful death act," when the decedent has initiated an action for those damages prior to death. 188 W.Va. at 563, 425 S.E.2d at 239. We held in Syllabus Point 3 of *Helmick* that:

West Virginia Code § 55–7–8 (1989) authorizes the decedent's beneficiaries to recover damages for a decedent's pain and suffering incurred between the time of injury and the time of death where the decedent had instituted an action for personal injury prior to his death and the action was revived and amended pursuant to West Virginia Code §§ 55–7–5 and 55–7–6 (1989).

The defendant argues that *W.Va.Code,* 55–7–8 and our holding in *Helmick* clearly and unambiguously provides that damages for pain and suffering of the decedent may be pursued only if the decedent instituted a personal injury action prior to his or her death. We disagree, because *W.Va.Code,* 55–7–8 is silent regarding the situation presented by the present case, and because the defendant's argument fails to take into account the expansive damages that juries can award as compensation for losses caused by a defendant's wrongful act, neglect or default under *W.Va.Code,* 55–7–6.

*W.Va.Code,* 55–7–6(b) and (c)(1)—quoted in footnote 7, *supra*—posits in the jury the power to award such damages as to it may seem fair and just, and states that the verdict shall include—*but may not be limited to*—damages encompassing both losses to the decedent's beneficiaries and losses to the decedent's estate. The Legislature's choice of the phrase "include[s], but may not be limited to" indicates that a jury in a wrongful death action has broad discretion in the losses it may consider and damages it may

---

**9.** *W.Va.Code,* 55–7–8 [1989] states, in pertinent part:

Where an action is brought by a person injured for damage caused by the wrongful act, neglect or default of any person or corporation, and the person injured dies as a result thereof, the action shall not abate by reason of his or her death but, his or her death being suggested, it may be revived in the name of his or her personal representative, and the complaint shall be amended so as to conform to an action under sections five and six [§§ 55–7–5 and 55–7–6] of this article, and the case pro-

ceeded with as if the action had been brought under said sections. Additionally, a separate and distinct cause of action may be brought, and if brought, shall be joined in the same proceeding for damages incurred between the time of injury and death where not otherwise provided for in said sections five and six. In either case there shall be but one recovery for each element of damages: Provided, That nothing in this section shall be construed in derogation of the provisions of section twelve [§ 55–7–12] of this article.

award, and its deliberations may include losses to the decedent's estate between the time of the wrongful act, neglect or default and the decedent's death. Any recovery for such injury shall not be included in the damages set forth separately on the verdict form pursuant to *W.Va.Code,* 55–7–6(c)(2), or otherwise set forth separately in such verdict. In sum, damages for a decedent's pain and suffering are considered to be damages that accrue to the decedent's estate, and are therefore recoverable under *W.Va.Code,* 55–7–6(b) and (c)(1). As previously stated, a majority of courts construing their wrongful death acts (usually in conjunction with a "survival" statute) appear to similarly hold that damages for a decedent's conscious pain and suffering prior to death may be recovered. *See* 3 *Recovery for Wrongful Death and Injury,* § 14.8 at 27–31; 1 *Stein on Personal Injury Damages, 3d Ed.,* § 3:57 at 3–173.[10]

In order for a jury to award damages for pain and suffering, most courts hold that there must be actual evidence of conscious pain and suffering of the decedent; conjecture will not suffice. 3 *Recovery for Wrongful Death and Injury,* § 14:10 at 35–36. "In determining the proper amount of an award of damages, the trial court may consider the pain and suffering experienced by a decedent while conscious between the time of injury and his resulting death." *Phillips v. Mazda Motor Mfg. (USA) Corp.,* 204 Mich.App. 401, 416, 516 N.W.2d 502, 510 (1994). Furthermore, "[t]he existence of a decedent's conscious pain and suffering may be inferred from other evidence that does not explicitly establish the fact." *Byrne v. Schneider's Iron & Metal, Inc.,* 190 Mich.App. 176, 180, 475 N.W.2d 854, 857 (1991) (decedent-child was crushed under boulder in sand pit; child's consciousness and resulting pain and

suffering could be inferred from evidence that child died of suffocation, and that breathing passages were obstructed with sand).

For example, in *Morrissey v. Welsh Co.,* 821 F.2d 1294, 1301 (8th Cir.1987), the decedent was buried under a collapsed wall, but was conscious, able to communicate with her would-be rescuers, and was aware of the fact that she had literally been buried alive. The decedent died before being removed from the rubble. The court concluded, applying Missouri law, that the decedent's survivors could recover damages for the decedent's premortem pain and suffering. *See also, Phillips v. Mazda Motor Mfg. (USA) Corp., supra,* (decedent's legs were "crushed like an accordion" by 17 ton truss; pain and suffering award proper because decedent remained conscious under truss for 30 minutes); *Bolton v. Massachusetts Bay Transp. Auth.,* 32 Mass.App.Ct. 654, 593 N.E.2d 248 (1992) (pain and suffering award proper because paramedic who accompanied decedent to the hospital testified that she was able to respond to verbal commands); *Higgins v. State,* 192 A.D.2d 821, 596 N.Y.S.2d 479 (1993) (award for conscious pain and suffering allowed when decedent received electrical shock after entering a lake; decedent contemplated death for several minutes because electrical shock rendered him unable to escape the water, then caused him to come into contact with a more intense source of electricity); *Smith v. Printup,* 254 Kan. 315, 866 P.2d 985 (1993) (award allowed when lay testimony of first person on the scene of automobile accident showed decedent was breathing erratically, and seemed to respond with a two-syllable word and body movement when told help was on the way).

---

**10.** As we discuss in the text, our wrongful death act allows a jury to assess *any* fair and just damages for any loss to the decedent's beneficiaries and the decedent's estate, regardless of the pecuniary loss. However, the leading treatise on wrongful death actions makes clear that if a wrongful death act limits damages to the pecuniary losses of the beneficiaries, or limits damages to the lost earning capacity of the decedent's estate, then damages for pain and suffering of the decedent prior to death cannot be recovered. It states:

> It is clear that under a *wrongful death statute* which measures recovery by the pecuniary loss to the survivors, no damages may be recovered for the pain and suffering endured by the decedent prior to his death, and such premortem damages are generally not recoverable even under *death* statutes which permit recovery for non-pecuniary loss, or which measure the damages by the loss to decedent's estate measured by destruction of earning capacity.
>
> 3 *Recovery for Wrongful Death and Injury,* § 14:8 at 32.

Courts generally hold that in those situations where death is instantaneous, or where there is no evidence that the decedent consciously perceived pain and suffering before death, no damages for pain and suffering are allowed. 3 *Recovery for Wrongful Death and Injury*, § 14:9 at 34–35; 1 *Stein on Personal Injury Damages*, § 3:58 at 3–174–175. *See, e.g., Lanzet v. Greenberg,* 222 N.J.Super. 540, 537 A.2d 742 (1988) (pain and suffering damages properly denied for decedent who remained in a chronic persistent vegetative state for slightly more than one year until death); *Ory v. Libersky,* 40 Md. App. 151, 389 A.2d 922 (1978) (no award allowed for pain and suffering because decedent made no verbal communication or movements indicating pain, only labored breathing and gurgling sounds from swallowing blood); *Baker v. Slack,* 319 Mich. 703, 30 N.W.2d 403 (1948) (evidence failed to show that decedent-pedestrian struck by automobile was conscious at any time during a thirty-minute interval before death, though she did make an outcry at the moment she was struck).

 We therefore hold that under the wrongful death act, *W.Va.Code,* 55–7–6, a jury's verdict may include damages for the decedent's pain and suffering endured between the time of injury and the time of death, where the injury resulted in death but the decedent did not institute an action for personal injury prior to his or her death. To award damages for pain and suffering, there must be evidence of conscious pain and suffering of the decedent prior to death. Where death is instantaneous, or where there is no evidence that the decedent consciously perceived pain and suffering, no damages for pain and suffering are allowed.[11]

11. We also note that evidence of the decedent's pain and suffering prior to his or her death from the injuries received as a result of the allegedly wrongful act may also be admissible to show the mental anguish of the decedent's beneficiaries. According to *W.Va.Code,* 55–7–6(c)(1)(A), the verdict of the jury in a wrongful death action shall include consideration of the "mental anguish" of the decedent's beneficiaries. *See also,* Syllabus Point 2, in part, *Voelker v. Frederick Business Properties Co.,* 195 W.Va. 246, 465 S.E.2d 246 (1995) ("Evidence of a beneficiary's relationship with the decedent may be admitted into evidence

## IV.

### *Conclusion*

For the foregoing reasons, we answer the certified question as follows:

Whether a decedent's beneficiaries may recover damages for a decedent's pain and suffering, incurred between the time of injury and the time of death, where the injuries result in death but the decedent did not institute an action for personal injury prior to his or her death.

ANSWER: Yes

Certified Question Answered.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Justice, dissenting:

(Filed July 7, 2003)

The majority opinion is result-driven and without a scintilla of legal support. In order to reach its desired result, the majority cavalierly disregards plain statutory language, ignores recent declarations of this Court, and tosses aside the Court's traditional rules of statutory construction.

The majority's newfangled construction of the wrongful death act relies entirely on the words "but may not be limited to" found in W.Va.Code § 55–7–6(c)(1) (1992).[1] According to the majority, these words give a jury in a wrongful death case "almost unfettered discretion" in awarding damages, including damages for the pain and suffering of the decedent between the time of injury and death. The problem with the majority's novel interpretation of W.Va.Code § 55–7–6(c) is that it is directly at odds with W.Va.Code § 55–7–8 (1989) and this Court's previous findings.

for purposes of determining damages in a wrongful death action pursuant to W.Va.Code, 55–7–6(c)(1) [1989] which provides for the recovery of damages for '[s]orrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent [.]' ").

1. According to W.Va.Code § 55–7–6(c)(1), in part, "[t]he verdict of the jury shall include, but may not be limited to, damages for the following[.]"

"It is an accepted rule of statutory construction that where a particular section of a statute relates specifically to a particular matter, that section prevails over another section referring to such matter only incidentally." *Cropp v. State Workmen's Compensation Comm'r*, 160 W.Va. 621, 626, 236 S.E.2d 480, 484 (1977) (citation omitted). The availability of damages for the decedent's pain and suffering where the decedent failed to file a personal injury action prior to death is specifically addressed in W.Va.Code § 55–7–8 which provides:

> Where an action is brought by a person injured for damage caused by the wrongful act, neglect or default of any person or corporation, and the person injured dies as a result thereof, the action shall not abate by reason of his or her death but, his or her death being suggested, it may be revived in the name of his or her personal representative, and the complaint shall be amended so as to conform to an action under sections five and six [§§ 55–7–5 and 55–7–6] of this article, and the case proceeded with as if the action had been brought under said sections. *Additionally a separate and distinct cause of action may be brought, and if brought, shall be joined in the same proceeding for damages incurred between the time of injury and death where not otherwise provided for in said sections five and six.* In either case there shall be but one recovery for each element of damages: Provided, That nothing in this section shall be construed in derogation of the provisions of section twelve [§ 55–7–12] of this article. (Emphasis added).

In order to fully understand W.Va.Code § 55–7–8, one must be mindful that "at common law all actions for personal injuries, being personal actions, died with the person ... [who] received ... the injury and no such action could be maintained ... by ... his personal representative." *City of Wheeling ex rel. Carter v. American Cas. Co.*, 131 W.Va. 584, 586, 48 S.E.2d 404, 406 (1948) (citations omitted). The purpose of W.Va. Code § 55–7–8 was to alter this common law rule by declaring that,

> when an action is brought by a person injured for damage caused by the wrongful act of any person and pending the action the person injured died as a result of the wrongful act, the action should not abate by reason of his death but might be revived in the name of his personal representative.

*City of Wheeling*, 131 W.Va. at 587–88, 48 S.E.2d at 407. The revived action, however, had to conform to a wrongful death action. *See Conrad v. Wertz*, 278 F.Supp. 428, 431 (N.D.W.Va.1968) ("It is also important to recognize that under [W.Va.Code § 55–7–8] further proceedings must conform to an action for wrongful death and the recovery is limited to the amount provided for by the wrongful death provisions." (Footnote omitted)); *Estate of Helmick by Fox v. Martin*, 188 W.Va. 559, 562, 425 S.E.2d 235, 238 (1992) ("the 1959 version of West Virginia Code § 55–7–8 essentially treated the revival of the decedent's personal injury action solely as a wrongful death action.").

In 1989, the Legislature amended W.Va. Code § 55–7–8 to include the italicized language set forth above. Again, this language provides that "[a]dditionally a separate and distinct cause of action may be brought, and if brought, shall be joined in the same proceeding for damages incurred between the time of injury and death where not otherwise provided for in said sections five and six." As noted by the majority, this Court considered the effect of this new language in *Estate of Helmick, supra*, where we explained that "[t]he 1989 amendment to West Virginia Code § 55–7–8 specifically provides that a recovery shall be had for damages such as pain and suffering *which are not otherwise provided for under the wrongful death act.*" 188 W.Va. at 563, 425 S.E.2d at 239 (citation omitted and emphasis added).

Thus, W.Va.Code § 55–7–8, as amended in 1989, provides that where a decedent instituted a personal injury action prior to death, his or her beneficiaries may recover damages for the decedent's pain and suffering incurred between the time of injury and the time of death. When applied to the instant facts, because the decedent did not institute a personal injury action prior to his death, his beneficiaries are not authorized to recover such pain and suffering damages.

Remarkably, the majority makes absolutely no effort to explain the provisions of W.Va.

Code § 55–7–8, but rather ignores the statute almost completely. In fact, the effect of the majority opinion is to render W.Va.Code § 55–7–8 completely meaningless. There is now actually a statute on our books, amended by the Legislature as recently as 1989, which serves absolutely no purpose. Said another way, according to the majority, the general and ambiguous words "but may not be limited to" in W.Va.Code § 55–7–6(c)(1) negate an entire statute the provisions of which are crystal clear.

The majority's disregard of our traditional rules of statutory construction is equally alarming. For example, this Court has held that it will not presume that the Legislature, in the enactment of a statute, intended to overturn established principles, unless it makes such an intention clear. *State ex rel. Reeves v. Ross,* 62 W.Va. 7, 57 S.E. 284 (1907). The majority, however, presumes that by inserting the vague words "but may not be limited to" in W.Va.Code § 55–7–6(c)(1), that the Legislature intended, with a single stroke of the pen, to remove all historical limitations on damages in wrongful death cases.

Finally, the majority opinion is in direct conflict with recent declarations of this Court. In *Estate of Helmick,* this Court read the same "but may not be limited to" language in W.Va.Code § 55–7–6(c)(1), and nevertheless could not have made it more plain that damages for a decedent's pain and suffering are not available under the wrongful death act. We explained in *Estate of Helmick* that,

> the 1959 version of West Virginia Code § 55–7–8 essentially treated the revival of the decedent's personal injury action solely as a wrongful death action. Thus, there was no specific recovery for the decedent's pain and suffering. The lack of the availability of any recovery for the decedent's pain and suffering was made clear in *Walker v. Walker,* 177 W.Va. 35, 350 S.E.2d 547 (1986), *superceded* [sic] *by statute on other grounds as stated in Arnold v. Turek,* 185 W.Va. 400, 407 S.E.2d 706 (1991) where this Court, interpreting what damages were recoverable under the wrongful death statute, stated that "[o]ur statute, patterned after an English statute

known as Lord Campbell's Act, allows an action for wrongful death based upon the loss sustained by the beneficiaries of the recovery, rather than on the injury suffered by the deceased or his estate." 177 W.Va. at 38, 350 S.E.2d at 549.

188 W.Va. at 562, 425 S.E.2d at 238. The Court further said that *"[i]t is clear upon examining [W.Va.Code §§ 55–7–5 and 55–7–6] that one of the types of damages which is not included in the statute as what the 'jury shall include' in its verdict is pain and suffering." Estate of Helmick,* 188 W.Va. at 563, 425 S.E.2d at 239 (emphasis added) (*citing* W.Va.Code § 55–7–6). Thus, this Court recognized, as recently as 1992, that the words "but may not be limited to" do not include damages for pain and suffering. Incredibly, the majority, considering the exact same statutory language, now reaches the opposite conclusion.

In sum, it is obvious that the Legislature simply has not provided for damages for the decedent's pain and suffering where the decedent failed to file a personal injury action prior to his or her death. However, because the majority does not like this result, it has usurped the Legislature's function and re-written a statute to comport with its own subjective notions of fairness. I refuse to be a part of such bald-faced judicial legislation. Accordingly, I dissent.