No. 13-0470 - <u>Manor Care, Inc. et al v. Tom Douglas, individually and on behalf of the Estate of Dorothy Douglas</u>

**FILED**
**June 18, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WORKMAN, Justice, concurring:

I concur in the result reached by the majority and more specifically, I agree with its analysis of the assignments of error regarding the verdict form, the non-exclusivity of the Medical Professional Liability Act (hereinafter "MPLA") to the facts of this case, the non-viability of a breach of fiduciary duty claim herein, and its analysis of the punitive damages. I write separately, however, to express my staunch disagreement with the majority's handling of the Nursing Home Act (hereinafter "NHA") claim. The majority has inexplicably refused to address the central issue argued by the parties—the obvious duplicativeness of the award of damages thereunder—and in a startling abuse of appellate discretion, has simply thrown out the award ostensibly because it cannot make sense of it. While I agree that the verdict form in this matter was poorly constructed and is far from cogent,[1] I am unaware of any legal authority which permits this Court to toss out a jury award like so much garbage simply because it claims to be confused by it. If the majority had simply addressed the issue as framed and argued by the parties, and as dictated by common sense, the same result would obtain without the majority looking positively silly.

---

[1] Although the nature of the damages awarded for the NHA violation is at best murky, what is very clear is that under the facts of this case, they are duplicative, as explained *infra*.

1

An overview of the jury's verdict and the respective claims is necessary to a full understanding of how misguided the majority's analysis is. Respondent asserted the following claims which were submitted to the jury: medical negligence, non-medical negligence, violation of the Nursing Home Act, and breach of fiduciary duty. In his First Amended Complaint, respondent made allegations of inadequate medical care and non-medical allegations which fall into three categories of inadequate budgeting, staffing, and reporting. The allegations contained in the complaint and the evidence adduced at trial as to the non-medical portions of respondent's case, i.e. "ordinary" negligence, violation of the NHA, and breach of fiduciary duty, was for all intents and purposes identical and centered around the inadequate budgeting and staffing at the Heartland Nursing Home.[2]

The jury returned a verdict in favor of respondent on the following claims and awarded separately designated general damages for each cause of action: 1) Nursing Home Act violation in the amount of $1.5 million; 2) breach of fiduciary duty in the amount of $5 million; and 3) negligence in the amount of $5 million, which it apportioned as constituting 80% non-medical or "ordinary" negligence and 20% medical negligence.[3] The jury further awarded $80 million in punitive damages. Absent from

---

[2] A summary of this evidence is contained in pages 27-28 of the majority opinion.

[3] Twenty percent of the $5 million negligence award which represented medical negligence was reduced post-verdict pursuant to the cap on non-economic damages pursuant to the MPLA.

2

the verdict form, however, was any cohesive delineation of the various categories of damages recoverable, resulting in a somewhat admittedly confounding jury award.

The majority concludes that respondent alleged both non-medical and medical negligence and, as a result, correctly rejects petitioners' argument that the entirety of respondent's case involves "health care services" which are governed exclusively by the MPLA. The majority correctly notes that "[c]laims related to business decisions, such as proper budgeting and staffing, by entities that do not qualify as Health Care Providers under the MPLA simply do not fall within that statutory scheme." Majority op. at *28-9.

The majority then proceeds to the NHA claim. Citing "confusion" with the wording of the verdict form, the majority simply throws out $1.5 million in damages awarded by the jury without so much as a single citation to legal authority permitting it to do so. The majority notes the complexity of the case, the "vague[ness]" of the jury instructions and verdict form, and its "inability to identify the nature and purpose for the NHA award" before vacating the award. The majority undertakes no analysis of the NHA, the evidence presented in support of that claim, or the type of damages recoverable for violation of the NHA. Even the most cursory analysis of the claims alleged and evidence presented would have quickly revealed that the evidence presented in support of both the medical and non-medical negligence claims it upheld was the same as that which

3

formed the basis of the NHA award. More to the point, it would have revealed that the measure of damages for violation of all the claims was the same.

It is this inescapable fact—that the *conduct* underlying all of the various causes of action alleged in this particular case is the same and such conduct gave rise to a singular, personal injury culminating in the wrongful death of Dorothy Douglas[4]—which brings into focus the issue most vociferously briefed and argued by the parties—all of which was *completely* ignored by the majority. Petitioner argues that all of the claims presented were subsumed by the MPLA and therefore subject to its non-economic damages cap. Respondent contends that the NHA presents a separate, viable basis for an award of damages, as evidenced by the language of West Virginia Code § 16-5C-15(d) which expressly provides that the remedies available under the NHA are "cumulative and . . . in addition to," other remedies at law. Respondent argues not that the damages awarded for the NHA are not duplicative, but rather that duplicative damages are specifically countenanced by the statute and therefore proper. I agree that the NHA presents a separate cause of action to which an injured party may avail himself or herself.

---

[4] The singular personal injury to Dorothy Douglas, naturally, gives rise to a variety of personal injury damages, i.e. pre-death pain and suffering damages pursuant to Syllabus Point 6 of *McDavid v. U.S.*, 213 W.Va. 592, 584 S.E.2d 226 (2003) and those damages outlined in our Wrongful Death Act. *At no time* did respondent argue that it presented a different measure or type of damages occasioned by the petitioners' violation of the NHA; rather, respondent argued merely that it was permitted by the language of the NHA to recover duplicative damages, as discussed more fully *infra*.

4

Thus, the real issue presented is whether such party may be awarded duplicative damages under the NHA.

Syllabus Point 7 of *Harless v. First Nat'l Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982) states:

> It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. *A plaintiff may not recover damages twice for the same injury simply because he has two legal theories.*

(emphasis added). *See also Sewell v. Gregory*, 179 W.Va. 585, 588 n.4, 371 S.E.2d 82, 85 n.4 (1988) ("The Appellants, of course, would not be entitled to recover twice for the same damages, but may assert available alternate theories of liability"); *Wiggins v. Eastern Associated Coal Corp.*, 178 W.Va. 63, 66, 357 S.E.2d 745, 748 (1987) ("The appellant could not have been granted any additional relief under the parallel West Virginia statute because '[d]ouble recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury.'" (citing Syl. Pt. 7, in part, *Harless*)); *Flannery v. United States*, 171 W.Va. 27, 297 S.E.2d 433 (1982); *Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990) (same). Accordingly, the common law is clear that duplicative damages are not permitted irrespective of the number of theories or claims advanced. Respondent, however, urges that the Legislature plainly intended to allow for such by stating that the

5

penalties and remedies in West Virginia Code § 16-5C-15(d) "shall be cumulative and in addition to all other penalties and remedies provided by law."

With regard to the Legislature's efforts to alter the common law, we have stated:

> The common law, if not repugnant of the Constitution of this State, continues as the law of this State unless it is altered or changed by the Legislature. Article VIII, Section 21 of the Constitution of West Virginia; Chapter 2, Article 1, Section 1, of the Code of West Virginia.

Syl. Pt. 3, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962). With regard to such alteration: "'The common law is not to be construed as altered or changed by statute, unless legislative intent to do so be *plainly manifested*.' *Shifflette v. Lilly*, 130 W.Va. 297, [43 S.E.2d 289 (1947)]." Syl. Pt. 4, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962) (emphasis added). Further, "[i]f the Legislature intends to alter or supersede the common law, it must do so *clearly* and *without equivocation*." *State ex rel. Van Nguyen v. Berger*, 199 W.Va. 71, 75, 483 S.E.2d 71, 75 (1996) (emphasis added); *see also Thomas v. McDermitt*, 232 W.Va. 159, ___, 751 S.E.2d 264 (2013).

With regard to our interpretation of statutes which purport to alter the common law, this Court has stated:

> It is a long-standing maxim that "[s]tatutes in derogation of the common law are strictly construed." *Kellar v. James*, 63 W.Va. 139, 59 S.E. 939 (1907). As the leading commentator in statutory construction states:

6

Statutes which impose duties or burdens or establish rights or provide benefits which were not recognized by the common law have frequently been held subject to strict, or restrictive, interpretation. Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in the common law.

Norman J. Singer, 3 *Sutherland Statutory Construction* § 61:1 at 217 (6th Ed. 2001). This Court has similarly concluded that, when interpreting an ambiguous statute that is contrary to the common law, the statute must be given a narrow construction. As we stated in Syllabus Points 3 and 4 of *Bank of Weston v. Thomas*, 75 W.Va. 321, 83 S.E. 985 (1914):

3. Statutes in derogation of the common law are allowed effect only to the extent clearly indicated by the terms used. Nothing can be added otherwise than by necessary implication arising from such terms.

4. The rule of construction, requiring effect to be given to all the terms used in a statute, if possible, is satisfied by assignment to them of a substantial, though limited, function or field of operation. *It does not require allowance to them, of a scope of operation coextensive with their literal import.*

*Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W.Va. 484, 491-92, 647 S.E.2d 920, 927-28 (2007) (emphasis added).

Rather than permitting a blind acceptance of the "literal import" of these terms, as urged by respondent, the foregoing requires this Court to construe the "cumulative and . . . in addition to" language in a manner which does the least violence to the common law. There can be no question that West Virginia Code § 16-5C-15(d) is

7

utterly silent as to whether this language intends to abrogate the common law prohibition on duplicative damages. To that extent, our caselaw would dictate that we simply cannot construe the language of West Virginia Code 16-5C-15(d) as permitting duplicative damages because the Legislature did not plainly manifest its intent to do so.

Fortunately, we need only examine the usage of this language elsewhere in our Code to understand its meaning, demonstrating that it does not purport to alter the common law at all. The Legislature has, in many other instances, indicated that a right or remedy is "cumulative and in addition to" other remedies provided at law—these statutes run the gamut from causes of action for abandoned wells to bondholder suits.[5] Each of these statutes expressly provides for a cause of action, relief or remedy for the subject matter covered in the statute and notes that the remedy provided therein is "cumulative" and/or "in addition to" all other remedies. However, unlike the NHA, this language is often followed by additional language further clarifying that the statute's "cumulative and . . . in addition to" language means simply that the remedy provided by the particular statute is not the *exclusive* remedy and that an action may be brought under that particular statute and/or any other existing law. For example, West Virginia Code § 22-10-11(a) (1994) provides:

---

[5] *See* W. Va. Code §§ 37-13-7 (2002) (removal/transfer of graves); 61-3E-2 (1996) (cumulative criminal penalties for use of explosives); 36-2-13 (1923) (disposition of estates); 46A-6C-12 (1991) (actions against credit service organizations); 8-18-21 (1969) (duty to pay for sewer service); 22-11-27 (1994) (water pollution); 16-5N-15(1997) (residential care facilities); 16-5D-15 (2003) (assisted living homes).

> It is the purpose of this article to provide *additional and cumulative remedies to address abandoned wells in this State and nothing herein contained shall abridge or alter rights of action or remedies now or hereafter existing,* nor shall any provisions in this article, or any act done by virtue of this article, be construed as estopping the State, municipalities, public health officers or persons in the exercise of their rights to suppress nuisance or to abate any pollution now or hereafter existing, or to recover damages.

(emphasis added). Perhaps more plainly stated, West Virginia Code § 13-2A-15 (1937)

provides, in part:

> No remedy conferred by this article upon any holder of refunding bonds, or any trustee therefor, *is intended to be exclusive of any other remedy, but each such remedy is cumulative and in addition to every other remedy* and may be exercised without exhausting and without regard to any other remedy conferred by this article or by any other law.

(emphasis added).[6] The fact that this additional explanatory language is not included in

West Virginia Code § 16-5C-15(d) is by no means evidence that the Legislature intended

---

[6] Similarly, West Virginia Code § 22-11-27 (1994) provides:

> It is the purpose of this article to provide additional and cumulative remedies to abate the pollution of the waters of the State and nothing herein contained shall abridge or alter rights of action or remedies now or hereafter existing, nor shall any provisions in this article, or any act done by virtue of this article, be construed as estopping the State, municipalities, public health officers, or persons as riparian owners or otherwise, in the exercise of their rights to suppress nuisances or to abate any pollution now or hereafter existing, or to recover damages.

*See also* W. Va. Code § 22-12-13 (1994) (providing article provides "additional and cumulative remedies" which do not "abridge[] or alter[] rights of action or remedies now (continued . . .)

9

something different than its usage elsewhere.  Rather, each of these statutes are worded slightly differently, but illustrate plainly the import of the "cumulative and . . . in addition to" language.

As demonstrated by its frequent usage in our own Code, this particular statutory language is not unique.  In fact, other states having statutes utilizing this exact language have rejected respondent's argument that the "cumulative and . . . in addition to" statutory language permits recovery of duplicative damages:

> We recognize that N.J.S.A. 56:8-2.13 enacted by P.L.1979, c. 347 as a supplement to the Consumer Fraud Act dealing with eating establishments provides:
>
>> The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.
>
> However, we conclude that the language of this enactment and the phrase, "in addition to any other appropriate legal or equitable relief" in N.J.S.A. 56:8-19 were not intended to sanction duplicative damages for the same economic loss. *See Neveroski v. Blair, supra*, 141 N.J.Super. at 382, 358 A.2d 473.

---

or hereafter existing"); W. Va. Code §39-1A-7 (stating that article entitled, in part, "article cumulative" provides "an additional method of proving notarial acts."

*49 Prospect Street Tenants Ass'n v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1149 (N.J.

Super. Ct App. 1988). The Massachusetts Supreme Court found similarly:

> In many cases, c. 93A creates "new substantive rights by
> making conduct unlawful which was not previously unlawful
> under the common law or any prior statute." *Id.* at 626, 382
> N.E.2d 1065. *See also Linthicum v. Archambault*, --Mass. --, -
> -, Mass. Adv. Sh. (1979) 2661, 2663, 398 N.E.2d 482 (relief
> under c. 93A is "in addition to, and not an alternative to,
> traditional tort and contract remedies"). This court has never
> said, however, that where certain conduct is already unlawful
> or becomes unlawful under another statute, c. 93A was
> intended to authorize a duplicative recovery for the wrong
> under both statutes.

*McGrath v. Mishara*, 434 N.E.2d 1215, 1222 (Mass. 1982); *see also Calimlim v. Foreign*

*Car Center, Inc.*, 467 N.E.2d 443, 448 (Mass. 1984) ("[W]here the same acts cause the

same injury under more than one theory . . . duplicative damage recoveries will not be

permitted"). As such, it seems plain that although an injured party may avail himself of

the NHA, in addition to any other causes of action provided at law, he may not duplicate

his recovery thereunder.[7] The Minnesota Supreme Court explained the distinction

---

[7]In fact, respondent's counsel appears to have articulated precisely this position below:

> [T]he underlying conduct that gave rise to that could give rise
> to multiple causes of action. The statute specifically says you
> can bring a Nursing Home Act and you can also bring any
> other remedies and causes of action as [sic] law. You cannot
> duplicate the damages. We all agree on that but there is no
> where and there is no authority that says you cannot bring a
> common law negligence claim in addition to a Nursing Home
> Act and that the conduct has to be different. That is not—as
> long as the damages are not duplicative, that is absolutely—
> there is no authority for that proposition. It's the same
> conduct but it can give rise to a violation of a right then

(continued . . .)

11

between permitting concurrent or cumulative causes of action and improperly permitting

duplicative damages, as follows:

> Ordinarily, unless a statute provides that its remedy is exclusive, a party should not be prevented from bringing concurrent claims. *See, e.g., Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 377-79 (Minn. 1990) (holding that both statutory cause of action for sexual harassment and common law cause of action for battery can be maintained even though both claims arise from same set of operative facts); *Cox v. Crown CoCo, Inc.*, 544 N.W.2d 490, 496-97 (Minn. App. 1996) (allowing claim for retaliatory discharge under both the Whistleblower Act and MOSHA); *State by Humphrey v. Baillon Co.*, 503 N.W.2d 799, 802 (Minn.App.1993) (rejecting argument that attorney fee provisions of Minn. Stat. ch. 117 are exclusive method of recovering attorney fees in eminent domain proceedings because those provisions do not expressly provide that they are exclusive method of recovering attorney fees in eminent domain proceedings). It is not for this court to deny a plaintiff the right to pursue a claim that the legislature has provided. Of course, a plaintiff may not recover duplicative money damages. *Wirig*, 461 N.W.2d at 379.

*Abraham v. County of Hennepin*, 639 N.W.2d 342, 346-47 (Minn. 2002) (emphasis

added); *see also Pitman v. Lightfoot*, 937 S.W.2d 496, 534 (Tex. Ct. App. 1996) ("[J]ury

findings on multiple theories of recovery [do not] automatically support duplicate awards

of actual damages. As we have already noted, although a party may assert any and all

causes of action it may have against another, it is limited to only one recovery of

damages"); *Hopkins v. Pennsylvania Power & Light Co.*, 112 F. Supp. 136, 137 (E. D.

---

you're right, there's a prima facia evidence that it can give
rise to a negligence cause of action that damages cannot be
duplicative.

Pa. 1953) ("The action under the Wrongful Death State of 1855 and the action under the Survival Act of 1937 are separate and distinct actions whose remedies are cumulative and not alternative, it being, however, 'important that the two actions, the one under the death acts and the other under the survival statute, should not overlap or result in a duplication of damages and thereby compel the tort feasor to pay more than the maximum damage caused by his negligent act.'" (citing *Pezzulli v. D'Ambrosia*, 26 A.2d 659, 661)).

As such, despite the fact that I cannot subscribe to the majority's summary dismissal of the $1.5 million NHA award because of its "confusion" about the matter, I believe it is plain that such award must be vacated because it is duplicative of the other damages awarded in this case.[8] Although this was the primary issue presented in this

---

[8]Respondent alternatively argued before this Court that the $1.5 million awarded for violation of the NHA was not duplicative because it was for "injury" to Dorothy Douglas and therefore represented an award of *McDavid* damages only, whereas the wrongful death verdict consisted of damages for only those items set forth in our Wrongful Death Act, W. Va. Code § 55-7-6. Like the majority, I disagree that the verdict form and instructions plainly bear that out. First, all of the jury instructions outlining the various causes of action refer simply to "injury" to Mrs. Douglas. Secondly, *McDavid* damages are not peculiar to NHA claims, i.e. the NHA delineates no particular category of damages recoverable; a party may recover the same personal injury damages that would otherwise be available to them under a mere negligence cause of action. Finally, *McDavid* damages are not a stand-alone claim—they are merely a category of wrongful death damages. As *McDavid* itself makes clear:

> Under the wrongful death act, *W. Va. Code*, 55–7–6 [1992], a jury's verdict may include damages for the decedent's pain and suffering endured between the time of injury and the time of death, where the injury resulted in death but the decedent did not institute an action for personal injury prior to his or her death. To award damages for pain and suffering, there

(continued . . .)

13

appeal, the majority chose to dodge it. The majority's refusal to so much as dignify these arguments, but rather, vacate the award on the ostensible basis that it is too confused by these issues to address them constitutes an unprecedented shirking of its judicial duty to resolve the issues presented. There is a large pink elephant in the room that the majority chose to ignore. Accordingly, insofar as stated herein, I concur.

---

must be evidence of conscious pain and suffering of the decedent prior to death. Where death is instantaneous, or where there is no evidence that the decedent consciously perceived pain and suffering, no damages for pain and suffering are allowed.

Syl. Pt. 6, *McDavid*, 213 W.Va. 592, 584 S.E.2d 226.

That said, I am troubled by the verdict form's lack of clarity on the award of *McDavid* damages, to which the Estate was clearly entitled. The problem presented by this verdict form is that respondent need only have included a separate line item for such damages, as the jury was instructed to award, that was not improperly tied in isolation to a particular claim, such as the NHA claim. Just as the petitioners had to suffer the consequences of not providing a verdict form which would have allowed a separate calculation of each defendant's punitives, so it seems the respondent should suffer like consequences for their failure to provide a proposed verdict form which would have clearly provided a separate line for *McDavid* damages.